William V. LUNA, Petitioner–Appellant,

v.

Steven CAMBRA, Jr., Warden; Daniel E. Lungren, Attorney General, Respondents–Appellees.

No. 01–55841.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2002.

Filed Sept. 27, 2002.

---

Craig Wilke, Office of the Federal Public Defender, Los Angeles, CA, for the petitioner-appellant.

Chung L. Mar, State of California Attorney General's Office, Los Angeles, CA, for the respondents-appellees.

Before FERGUSON, TASHIMA, and GRABER, Circuit Judges.

## OPINION

FERGUSON, Circuit Judge.

Petitioner William Luna ("Luna") appeals the District Court's denial of his petition for a writ of habeas corpus alleging ineffective assistance of counsel at his state trial for attempted murder, assault with a deadly weapon, and robbery. The District Court found that trial counsel's performance was deficient due to his failure to interview and subpoena two alibi witnesses and one exonerating witness, but concluded that his error was not prejudicial. We reverse and remand.

## I.

### A. Factual Background and Procedural History

At approximately 3 a.m., May 13, 1988, Estaban Leal ("Leal") was robbed while walking through Mountain View Park in El Monte, California. He was approached by two men, one of whom demanded his money and the other hit him in the face. Leal fell to the ground and was stabbed eleven times in the back. After regaining consciousness, he discovered that his watch, wallet, and cash were missing.

Leal was admitted to the intensive care unit ("ICU") at the hospital. Late that afternoon, two detectives contacted him there and showed him two folders, each containing six photographs of possible suspects. Leal identified the photographs of Luna and co-defendant Carlos Arcinega ("Arcinega") as the two men who had robbed and stabbed him. Luna was ar-

rested at home two days later. Luna and Arcinega were charged with attempted murder, assault with a deadly weapon, and robbery. At trial, the prosecution presented the testimony of Leal, who identified Luna as the man who had stabbed him. On cross-examination by Arcinega's counsel, Leal admitted that he had consumed five beers in the hours preceding the attack, he was not wearing his prescription eye glasses, and the lighting was poor in the park due to a burnt-out light. The investigating detectives testified regarding Leal's description of his assailants, his identification of Luna and Arcinega while in the ICU, and the lack of physical evidence found at the scene of the crime.

Trial counsel presented Luna's testimony that he was home sleeping at his mother's house at the time of the crime. Luna testified that his family was home with him. While he conceded that the other family members were asleep at 3 a.m., he testified that "it's a little room" and "if somebody were to get up," he or the others would have awoken. Counsel did not offer any other witnesses on Luna's behalf. Luna was convicted of attempted murder, assault, and robbery. He was sentenced to life imprisonment with possibility of parole. His conviction and sentence were affirmed on direct appeal.

In 1994, Luna filed a habeas corpus petition in the California Court of Appeal. Both the Court of Appeal and the California Supreme Court denied his petition. In 1997, Luna filed a writ of habeas corpus *pro se* in the District Court, alleging, *inter alia*, that his trial counsel was constitutionally ineffective for failing to interview or subpoena two alibi witnesses (Gloria Luna and Jennie Luna) and two exonerating witnesses (Richard Lopez and Ronny Valencia).[1] After a three-day evidentiary hearing held in February 2000, Magistrate Judge Elgin Edwards recommended the denial of Luna's habeas petition. The District Court adopted the Magistrate Judge's recommendations and denied the petition with prejudice.

## B. The Evidentiary Hearing

The Magistrate Judge held an evidentiary hearing to determine two issues: (1) whether trial counsel had interviewed the witnesses whom Luna suggested as having corroborating and exculpatory information, and (2) what those witnesses would have said if interviewed by counsel and called to testify at trial. An eight-member advisory jury was empaneled to assess the credibility of the witnesses and of trial counsel. The jury heard the testimony of Luna, Jennie Luna (Luna's sister), and Gloria Luna (Luna's mother). Luna introduced at the evidentiary hearing a declaration by Richard Lopez confessing to the crime. However, Lopez was not permitted to testify before the advisory jury because of his invocation of the Fifth Amendment privilege against self-incrimination.

### 1. Alibi Witnesses

Both Jennie and Gloria Luna testified that Luna was home at the time of the crime. They lived with Luna and six other family members in a small, one-bedroom house. Jennie recalled that she had observed Luna coming home that evening, sleeping that night, and preparing to go to school the next morning. Gloria also testified that he had not left the house after he came home earlier that evening. She specifically remembered that he had woken up early the next morning for school. Both testified that, due to their living arrangements, they would have been awakened by

---

1. On appeal, Luna does not argue ineffectiveness of counsel with respect to Ronny Valencia, presumably because Valencia did not testify at the hearing.

Luna's movements if he had come or gone in the middle of the night.

Both Jennie and Gloria were willing and available to testify at trial. Yet, neither was contacted by Luna's counsel. Jennie had expected to testify and even went to the courthouse during trial with the hope of speaking to Luna's counsel. Gloria was also willing to testify at trial, but trial counsel did not contact her.

## 2. Exonerating Witness

Richard Lopez testified, outside the presence of the jury, that he witnessed an attack, robbery, and stabbing of a man in Mountain View Park at 3 a.m. on May 13, 1988. He testified that a wallet and a six-pack of beer were taken from the victim. Lopez also testified that Luna was not there. Lopez stated that he was willing and available to testify to these facts at Luna's trial,[2] but no one had contacted him. However, on cross-examination, Lopez invoked his Fifth Amendment privilege against self-incrimination with respect to the State's questions about his personal participation in the crime. On redirect, habeas counsel questioned Lopez regarding confessions allegedly made to him and an investigator with his office. Again, Lopez invoked the Fifth.

Due to Lopez' invocation of the Fifth Amendment, his testimony was not permitted. Luna's request to present evidence of Lopez' out-of-court statements was also denied. The Magistrate Judge ruled that Lopez' declaration, which confessed his guilt to the crime, was not admissible as a statement against penal interest because it was "utterly unreliable" in light of Lopez' invocation of the Fifth Amendment. Evidence of Lopez' prior statements to habeas counsel and his investigator were similarly disallowed on the basis that this evidence

was not presented in the state court below and thus there was no exhaustion in state court.

## 3. Findings of the Advisory Jury and Magistrate Judge

At the close of the evidentiary hearing, the jury submitted its answers to written interrogatories. It found that Luna had informed trial counsel about Jennie and Gloria Luna's ability to corroborate his alibi, that counsel had failed to contact them, and that they would have testified at trial as to Luna's whereabouts at the time of the crime. The advisory jury also found that Luna had urged trial counsel to contact Lopez because he could testify that Luna did not commit the crime and had information regarding the person who did, but counsel failed to contact him.

The Magistrate Judge adopted the jury's findings and concluded that the facts supported Luna's claim of deficient representation. However, he found that Luna was not prejudiced by trial counsel's errors because the testimony of Jennie and Gloria Luna was indefinite as to time and biased due to their familial relationship with Luna. Further, he concluded that "there is reason to doubt" whether Lopez would have been permitted to testify due to his invocation of his Fifth Amendment privilege. These findings were adopted by the District Court which denied Luna's habeas petition. Luna timely appealed to this court.

## II.

We review de novo the District Court's denial of habeas corpus relief. *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir.2001). We review for clear error any findings of fact relevant to the District Court's denial. *Murtishaw v. Woodford*,

2. Lopez was incarcerated at the time of Luna's trial.

255 F.3d 926, 939 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1313, 152 L.Ed.2d 222 (2002).

Because Luna filed this petition in the District Court on April 17, 1997, his petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, we may grant a petition for a writ of habeas corpus only if the "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■ A state court decision is " 'contrary to' " federal law if the court either " 'applies a rule that contradicts the governing law set forth' " by the Supreme Court or arrives at a different result in a case, that is " 'materially indistinguishable from a [Supreme Court] decision.' " *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 404–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A state court decision is an " 'unreasonable application of' " the Supreme Court's precedent if the court " 'correctly identifies the governing legal rule but applies it unreasonably to the facts' " of the case. *Id.* (quoting *Williams,* 529 U.S. at 407–08, 120 S.Ct. 1495).

■ While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." *Van Tran v. Lindsey,* 212 F.3d 1143, 1154 (9th Cir.), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). We reverse only if "a careful review of the record and the applicable case law leaves us with the 'firm conviction' that the state court was wrong." *Fisher v. Roe,* 263 F.3d 906, 915 (9th Cir.2001) (citing *Van Tran,* 212 F.3d at 1153–54)., *abrogated on other grounds by Mancuso v. Olivarez,* 292 F.3d 939 (9th Cir.2002).

Luna argues that AEDPA does not apply to his claim because his claim was not adjudicated on the merits. The basis of his argument is that the state courts failed to explain their denial of his claim. The California Court of Appeal cited case law but offered no rationale, and the California Supreme Court simply denied his petition without citation. However, such terse denials constitute adjudication on the merits. *Hunter v. Aispuro,* 982 F.2d 344, 347–48 (9th Cir.1992).

■■ Nevertheless, the lack of a reasoned explanation is relevant to our scope of review. When we are confronted with a state court's "postcard denial," such as the one issued by the California Supreme Court in this case, we have nothing to which we can defer.[3] *Fisher,* 263 F.3d at 914. Accordingly, "we must conduct 'an independent review of the record . . . to determine whether the state court clearly erred in its application of controlling federal law.' " *Id.* (alteration in original) (quot-

---

**3.** Ordinarily, when the California Supreme Court denies a petition for review without comment, we "look through" the unexplained California Supreme Court decision to the last reasoned decision as the basis for the state court's judgment. *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000) (cit-

ing *Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)) *cert. denied,* —— U.S. ——, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). In this case, however, the California Court of Appeal also failed to provide a reasoned explanation for its denial.

ing *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000)).

## III.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether a defendant was provided adequate representation, we must analyze the facts under *Strickland*'s two-pronged test. *Id.* at 687, 104 S.Ct. 2052. This requires us to determine, first, whether "counsel's performance was deficient" and, second, whether the "deficient performance prejudiced the defense." *Id.*

On appeal, the State does not contest the District Court's finding that trial counsel's errors constituted deficient performance. Thus, the sole issue before us is whether Luna was prejudiced by that deficiency. Accordingly, we must determine whether trial counsel's failure to interview and subpoena two alibi witnesses and one exonerating witness prejudiced Luna.

To show prejudice under *Strickland,* Luna must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Because Luna is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

### A. Alibi Witnesses

■ At trial, Luna's sole defense was that he was home asleep at the time of the crime. Not only was he the only witness to testify as to this fact, but he was the only witness in his defense. Both his sister and mother were willing and available to corroborate his account at trial. But, trial counsel failed to contact them.

We have previously held that "trial counsel's failure to investigate and put on the stand possible alibi witnesses constituted ineffective assistance which prejudiced '[petitioner] to the extent that it undermines confidence in the outcome of his trial.'" *Lord v. Wood,* 184 F.3d 1083, 1096 (9th Cir.1999) (quoting *Brown v. Myers,* 137 F.3d 1154, 1158 (9th Cir.1998)).

Here, two witnesses were available to testify in support of Luna's alibi. Nevertheless, the District Court concluded that this error did not prejudice Luna on the basis that their testimony was "indefinite" and "almost devoid of probative value because neither of them was able to say that they actually had first-hand knowledge of petitioner's whereabouts at the time of the attack in the park." Further, it held that, if their testimony had been admitted at trial, "it is extremely unlikely that the jury would have given their testimony significant weight" due to their "obvious bias" as family members.

We have previously found prejudice when counsel failed to investigate and present the testimony of alibi witnesses, even though their testimony was "vague with regard to time." *Brown,* 137 F.3d at 1157. In *Brown,* we reasoned that, notwithstanding the imprecision of the witnesses' account, the addition of their testimony may have resulted in a different verdict because it "was consistent with [petitioner's] account" and would have created more equilibrium in the evidence presented to the jury. *Id.* at 1157–58. We held that, "[a]s it was, without any corroborating witnesses, [petitioner's] bare testimony left him without any effective defense." *Id.* at 1158.

Similarly, while neither Jennie nor Gloria observed Luna sleeping at 3 a.m. that morning, their testimony was consistent with Luna's account that he was at home asleep at the time. Not only did they specifically recall that Luna went to sleep at home the night before and woke up at home the next morning, but they also corroborated Luna's testimony that they or others would have awakened if he had come or gone in the middle of the night. Because of their cramped living conditions in the small, óne-bedroom house, Jennie had often been awakened at the sound of someone getting out of bed or up from the floor, using the bathroom, or opening the door. Gloria slept in the front room and would have awakened if Luna had left or re-entered the house because he necessarily would have passed through that room.

In addition, Jennie and Gloria Luna's testimony should not have been discounted so completely due to their familial ties to Luna. We have previously found prejudicial counsel's failure to investigate and/or present the testimony of family members and loved ones. *See, e.g., Brown,* 137 F.3d at 1157 (finding prejudice when trial counsel failed to contact alibi witnesses, including the petitioner's sister and girlfriend); *Johnson v. Baldwin,* 114 F.3d 835, 839–40 (9th Cir.1997) (finding prejudice when trial counsel failed to interview petitioner's girlfriend and grandmother because he would have discovered that the alibi was false and elected another trial strategy).

Thus, the simple fact that Jennie and Gloria Luna were family members did not render trial counsel's failure to investigate and present their corroboration of Luna's alibi harmless. Particularly given that Luna's only defense was that he was home asleep at the time of the crime, and his bare testimony the only proof, their testimony, which "buttressed [Luna's] account on this crucial point, ... creates a reason-able probability that the fact-finder would have entertained a reasonable doubt concerning guilt." *Brown,* 137 F.3d at 1158. Thus, we hold that counsel's failure to investigate and present Jennie and Gloria Luna's testimony was prejudicial.

## B. Exonerating Witness

Luna also contests the District Court's conclusion that he was not prejudiced by counsel's failure to interview and subpoena Lopez as a witness. He argues that evidence of Lopez' confessions, whether proved by in-court testimony or out-of-court declarations against penal interest, would have exonerated him of the charges of which he was convicted.

The District Court refused to find counsel's failure to interview and subpoena Lopez prejudicial because, at the evidentiary hearing, Lopez invoked his Fifth Amendment privilege against self-incrimination on all questions regarding his participation in the crime. The District Court adopted the Magistrate Judge's finding that Lopez would have done the same at trial and, thus, concluded there was "reason to doubt" that he would have been permitted to testify before the jury. On the basis of Lopez' answers at the evidentiary hearing, there is no reasonable probability that Lopez would have been permitted to testify at trial. However, we find the refusal to consider evidence of Lopez' out-of-court confessions as declarations against penal interest to be error.

Under California law, out-of-court statements are admissible in evidence if (1) the declarant is unavailable, and (2) his statements "so far subjected him to the risk of civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." CAL. EVID. CODE § 1230. The declaration must also be "sufficiently reliable to warrant admission

despite its hearsay character." *People v. Duarte*, 24 Cal.4th 603, 101 Cal.Rptr.2d 701, 12 P.3d 1110, 1115 (2000). "To determine whether the declaration passes the required threshold of trustworthiness, a trial court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant." *People v. Cudjo*, 6 Cal.4th 585, 25 Cal.Rptr.2d 390, 863 P.2d 635, 648 (1994) (per curiam) (internal quotation marks and citation omitted).

A witness' proper invocation of the Fifth Amendment privilege against self-incrimination makes him or her unavailable for purposes of section 1230. Cal. Evid. Code § 240(a)(1); *Cudjo*, 25 Cal.Rptr.2d 390, 863 P.2d at 648. Lopez invoked this privilege at the evidentiary hearing with respect to every question pertaining to either his participation in the crime or his out-of-court confessions to habeas counsel and habeas counsel's investigator.

Neither party disputes the propriety of Lopez' invocation of this privilege on the ground that his responses would expose him to criminal liability. Thus, we must determine whether Lopez' declaration and out-of-court confessions were both against his penal interest when made and sufficiently reliable to warrant admission.[4] *Duarte*, 101 Cal.Rptr.2d 701, 12 P.3d at 1115.

### 1. Lopez' Declaration

 Lopez' declaration, which was filed with Luna's habeas corpus petition and which admitted that he was guilty of the crime for which Luna was charged, was not considered at the evidentiary hearing. A statement confessing one's guilt to a serious crime is, on its face, against one's penal interest. *See Cudjo*, 25 Cal.Rptr.2d 390, 863 P.2d at 648–49.

 Lopez' declaration averred that he and his friend assaulted and robbed a man in Mountain View Park in the early morning hours of May 13, 1988. The declaration stated that Lopez "participated" in the crime and had "asked [Leal] to give me his money, [then] a fight started. In the end we took this mans [sic] money and left him lying on the ground." It further stated that Lopez was "willing to testify under oath about this crime in court as I was when I first heard that William Luna and Carlos Arcinega were being charged with a crime I personally participated in." There can be no doubt that these statements were "specifically disserving" to Lopez' penal interest because they unequivocally confessed his guilt to a serious crime. *Duarte*, 101 Cal.Rptr.2d 701, 12 P.3d at 1116.

Moreover, the confession in Lopez' declaration carries indicia of trustworthiness because he memorialized it on paper, under oath, and presented it as truth to a court of law. There is no evidence in the record to suggest that Lopez made the statement in an attempt to "shift blame or curry favor." *Williamson v. United States*, 512 U.S. 594, 603, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Nor is there evidence that Lopez filed the declaration just "to aid his friend." *People v. Frierson*, 53 Cal.3d 730, 280 Cal.Rptr. 440, 808 P.2d 1197, 1205 (1991). Finally, no record evidence suggests that Lopez made the statement unwittingly or without understanding the ramifications of his statement. To the contrary, Lopez had been involved in the criminal justice system and knew or should

---

4. The state concedes that the statute of limitations had not run when Lopez made the self-incriminating statements.

have known that his sworn declaration could be used against him in a subsequent criminal trial. Nevertheless, he confessed to the crime in a court document under the threat of perjury.

The District Court held that the declaration was "unreliable" because Lopez invoked his privilege against self incrimination instead of testifying about his participation in the crime. The credibility of Lopez' confession should not have been decided based on statements made in Lopez' declaration that he would actually testify as to the fact of his guilt. Rather, it should have been analyzed separately whether Lopez' inculpatory statement regarding his guilt was admissible as a declaration against penal interest. *See Williamson,* 512 U.S. at 599–600, 114 S.Ct. 2431 (explaining that each statement within a confession should be analyzed separately to determine whether it was sufficiently inculpatory to be admitted into evidence). If, considering all the facts and circumstances, that inculpatory statement was so far against Lopez' penal interests that a reasonable person would not have made it if it were not true, this portion of the declaration was admissible. *Id.* at 603–04, 114 S.Ct. 2431; *Duarte,* 101 Cal.Rptr.2d 701, 12 P.3d at 1119.

A reasonable person in Lopez' position would not have made a sworn declaration admitting his guilt to a serious crime if he did not believe it to be true. *See Cudjo,* 25 Cal.Rptr.2d 390, 863 P.2d at 648–49. The fact that Lopez later refused to testify is not surprising, nor does it render the underlying confession untrustworthy. Thus, we conclude that the District Court erred in ruling that Lopez' declaration confessing to the crime would not be admissible at trial.

If Lopez' declaration had been considered below, it would have provided substantial evidence that trial counsel's failure to interview Lopez was prejudicial. In *Sanders v. Ratelle,* 21 F.3d 1446, 1457 (9th Cir.1994), we found prejudice from counsel's failure to attempt to obtain a statement from the defendant's brother, who had confessed to the crime because, had counsel done so, "he might very well have obtained a confession similar to the written declaration that accompanied the habeas petition." Even though the defendant's brother ultimately might have invoked the Fifth Amendment and refused to testify at trial, a written confession "would have provided powerful evidence of [petitioner's] innocence, and could have been introduced as a declaration against penal interest." *Id.*

Here, too, the fact that trial counsel did not attempt to obtain such a statement from Lopez was prejudicial because he could have introduced an out-of-court confession into evidence as a declaration against penal interest. *Id.* Thus, the District Court abused its discretion in refusing to consider whether Lopez' declaration provided evidence of prejudice in this case.

### 2. Lopez' Confession to Habeas Counsel

Furthermore, the credibility of Lopez' confession is bolstered by corroborating evidence. Habeas counsel filed a declaration, stating that Lopez confessed to him and his investigator during a pre-evidentiary hearing interview. The declaration averred that:

> Mr. Lopez stated that in May 1988, he robbed a man in Mountain View Park, in El Monte, California.
>
> During the robbery, he hit the man several times in the face and body, and he stabbed the man in the back. Mr. Lopez stated that this occurred in the early morning hours, and he was with Ronnie [sic] Valencia.

The declaration also states that Lopez made similar statements to an investigator in the Deputy Attorney General's office.

Neither testimony nor other evidence of these confessions was allowed at the evidentiary hearing because that evidence had not been presented in the state courts below and thus exhaustion was lacking. However, the District Court misunderstood the purpose for which the evidence was proffered.

Section 2254(b) provides that habeas relief must be denied if the petitioner has not "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "To properly exhaust a claim, petitioner must give the state supreme court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim.' A state prisoner must 'have fairly presented to state courts the substance of his [or her] federal habeas claim.'" *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir.2000) (per curiam) (alterations in original) (quoting *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam)), *cert. denied,* —— U.S. ——, 122 S.Ct. 94, 151 L.Ed.2d 55 (2001). While federal-state comity concerns preclude our consideration of " 'new evidence that places[a] claim in a significantly different posture' " on habeas review, we have previously considered additional evidence that does not alter the gravamen of the petitioner's claim. *See Brown*, 137 F.3d at 1157 n. 3 (alteration in original) (quoting *Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir.1988)).

In this case, Luna fairly presented his ineffective assistance of counsel claim to the state court. The gravamen of his claim was that he was prejudiced by trial counsel's failure to investigate Lopez' involvement in the crime because counsel could have obtained incriminating statements from Lopez had he done so. In presenting his ineffective assistance claim to the state court, Luna attached a copy of Lopez' declaration, which stated that he would have made inculpatory statements to trial counsel if he had been contacted by him.

At the evidentiary hearing, however, Lopez unexpectedly invoked his Fifth Amendment privilege against self-incrimination. In response, habeas counsel sought to admit Lopez' statements made in his declaration as declarations against penal interest. When the District Court refused on the basis that it was unreliable, habeas counsel then sought to admit corroborating evidence that Lopez had made prior confessions to him and to his investigator.

The purpose of offering the evidence of Lopez' prior confessions was not to admit new evidence, which would place Luna's claim in a qualitatively different posture than while before the state court. Rather, the purpose of the evidence was to restore the credibility of his evidence of prejudice resulting from trial counsel's errors, once Lopez' testimony was stricken by the court. Thus, the District Court abused its discretion in refusing to consider evidence of Lopez' statements to habeas counsel for purposes of ascertaining the credibility of Lopez' declaration and, thus, determining whether trial counsel would have obtained inculpatory statements from Lopez had he interviewed him.

The evidence of Lopez' declaration, as corroborated by evidence of his out-of-court confessions, provided substantial evidence that trial counsel would have obtained inculpatory statements from Lopez, similar to those made to habeas counsel during the pre-evidentiary hearing interview. *Sanders*, 21 F.3d at 1457; *see also Avila v. Galaza*, 297 F.3d 911, 921 (9th

Cir.2002) (holding that trial counsel's failure to investigate and present evidence that the defendant's brother committed the crime was prejudicial because "there is a reasonable probability" that the brother "would have made an inculpatory statement or testified at trial had [counsel] adequately investigated this case"). This supports our conclusion that Luna was prejudiced by trial counsel's errors.

### C. Analysis of Prejudice in Light of the Prosecution's Case

▮ **Finally, we must consider the relative strength of the** prosecution's case in analyzing whether counsel's errors prejudiced Luna. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052; *see also Johnson*, 114 F.3d at 838 ("[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.") (citation and internal quotation marks omitted).

▮ As aforementioned, the prosecution's case rested on the victim's identification of Luna. However, the probative value of his identification is limited because he had been drinking, he was not wearing prescribed eye glasses, he was attacked in the middle of the night, and the lighting was poor. *See Rios v. Rocha*, 299 F.3d 796, 802 (9th Cir.2002) (finding prejudice despite eyewitness testimony, in part, because one of the witnesses "was drunk on the night of the shooting and had very poor eyesight"); *see also Avila*, at 923 (finding prejudice despite the victim's identification because the "testimony was not rock solid"). Furthermore, no other testimony or physical evidence linked Luna to the crime. In short, the prosecution's case was relatively weak, and we must evaluate the "potential prejudicial effect of counsel's deficient performance ... in light of that fact." *Johnson*, 114 F.3d at 838.

As discussed above, absent counsel's errors, the jury would have been presented with a much more balanced picture of the evidence for and against Luna. Jennie and Gloria could have corroborated Luna's alibi that he was home asleep at the time of the crime. Further, Lopez' out-of-court declarations against penal interest could have exonerated Luna from the charges.

The District Court incorrectly concluded that "the eyewitness identification of petitioner by the victim makes it extremely unlikely that, but for the attorney's errors, the outcome would have been different." To the contrary, the victim's questionable identification standing alone made for a relatively weak case. Nevertheless, as weighed against Luna's self-serving testimony—which constituted the whole of his defense—this evidence convinced the jury.

Under these circumstances, we have "little doubt that the testimony of the [three] additional witnesses 'would have altered significantly the evidentiary posture of the case.'" *Rios*, at 813 (quoting *Brown*, 137 F.3d at 1157). Had the jury heard Jennie and Gloria Luna's corroborating testimony and evidence of Lopez' inculpatory statements, there is a reasonable probability that the jury would have returned a different verdict. For these reasons, our confidence in its guilty verdict has been undermined. We, therefore, hold that Luna was prejudiced by trial counsel's failure to interview and subpoena these witnesses at trial.

In sum, Luna was deprived of competent counsel at his trial and has shown prejudice therefrom. Thus, he is entitled to relief under *Strickland*. Because the state court failed to find ineffectiveness of counsel, its denial of Luna's claim was objec-

tively unreasonable in light of the Supreme Court's decision in *Strickland.* Therefore, under AEDPA, Luna is entitled to relief.

## IV.

It is hard to conceive how a criminal defendant is not prejudiced when his attorney wholly fails to investigate evidence that he was not at the scene of the crime and that another man was guilty of the crime with which he was charged. Because the state court and the District Court concluded otherwise, we must reverse. We thus remand this case to the District Court with instructions to issue the writ of habeas corpus, unless California elects to retry Luna within 90 days from the date of the issuance of the mandate in this case.

**REVERSED AND REMANDED.**