**Buntheoun CHEA, Petitioner—Appellant,**

v.

**K.W. PRUNTY, Warden, Respondents—Appellees.**

No. 02–15279.

D.C. CV–97–00677–FCD.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2003.

Decided March 3, 2003.

Before SILVERMAN and GOULD, Circuit Judges, and WEINER, District Judge.*

* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District

## MEMORANDUM**

California state prisoner Buntheoun Chea appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his 1993 jury conviction of murder and conspiracy to commit first degree robbery. The district court had jurisdiction pursuant to 28 U.S.C. § 1331; this court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253. We affirm.

A member of the jury which convicted Chea received extrinsic information about him from the juror's son, who was incarcerated at the same facility with Chea and his codefendants. Chea asserted in post trial motions that this information—that Chea knew how to kickbox, had tattoos and was a "bad dude"—was disseminated to fellow jurors, in violation of Chea's Sixth and Fourteenth Amendment rights. The state trial court conducted an evidentiary hearing, made findings of fact, and concluded that, while the one juror did receive extrinsic evidence from her son and two other jurors were aware of it, the rest of the jury panel, including the one holdout juror who eventually changed her mind and voted to convict, did not have access to the extrinsic evidence. The California Court of Appeal found that no prejudice occurred because the only juror who hear the "bad dude" comment admonished the juror who made the comment that the jury could not consider the comment and the juror accepted the admonishment. The only uncertain juror did not hear the comment. In addition, evidence at trial established that Chea knew how to kickbox and had tattoos.

of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

As this case is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Chea must demonstrate that the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). Under AEDPA, state court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Zichko v. Idaho,* 247 F.3d 1015, 1019 (9th Cir. 2001). This presumption applies even if the finding was made by a state court of appeals rather than by the state trial court. *See Bragg v. Galaza,* 242 F.3d 1082, 1087 (9th Cir.2001).

The law applied by the California courts was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. "[A] state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Penry,* 532 U.S. at 792; *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an "unreasonable application of" the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. *Penry,* 532 U.S. at 792.[1]

1. Chea argues that the state court's decision was contrary to established federal law because the California Court of Appeal failed to cite to any U.S. Supreme Court authority in its discussion of the jury misconduct issue. This alone is an insufficient basis to conclude

Several factors, none of which is to be deemed in itself dispositive, are considered in determining whether the jury's exposure to extrinsic evidence constitutes reversible error:

> (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which to jury discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of ... whether the introduction of extrinsic material [substantially and injuriously] affected the verdict.

*Sassounian v. Roe,* 230 F.3d 1097, 1109 (9th Cir.2000).[2] Other factors "might nonetheless suggest that the potential prejudice of the extrinsic information was diminished in a particular case." *Id.* (quoting *Jeffries v. Wood,* 114 F.3d 1484, 1491 (9th Cir.1997) (en banc)). These include:

> ■ whether the prejudicial statement was ambiguously phrased; [2] whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; [3] whether a curative instruction was given or some other step taken to ameliorate the prejudice; [4] the trial context; and [5] whether the statement was insuffi-

ciently prejudicial given the issues and evidence in the case.

*Id.* The California Court of Appeal described its review of the juror misconduct claim as

> a sort of legal intersection. On the one had, a trial court is given substantial discretion in ruling on a motion for new trial involving alleged juror misconduct.... On the other hand, we must review the entire record and determine independently whether the misconduct, if it occurred, was prejudicial....
>
> A juror engages in misconduct if he or she considers evidence outside the record.... A "presumption of prejudice arises from *any* juror misconduct." ... This presumption is rebutted when there is "no substantial likelihood" that the vote of one or more of the jurors was influenced by exposure to the improper material.

The two standards, although differently phrased, contain the same core elements: the existence of misconduct, and a determination of prejudice. Nothing in the state court's use of the rebuttable presumption of prejudice contradicts Supreme Court precedent. More importantly, nothing in California law contradicts the basic Supreme Court precedent that jury consideration of prejudicial extrinsic evidence violates confrontation, cross-examination and assistance of counsel rights. *See Turner*

the state court's decision was an incorrect application of Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (avoiding a decision contrary to Supreme Court precedent does not require a citation to Supreme Court precedent or even an awareness of it so long as neither the reasoning nor the result of the state-court decision contradicts them.)

**2.** "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive

authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.'" *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.2002) (quoting *Van Tran v. Lindsey,* 212 F.3d 1143, 1154 (9th Cir.2000)). "We reverse only if 'a careful review of the record and the applicable case law leaves us with the firm conviction that the state court was wrong.'" *Luna,* 306 F.3d at 960 (quoting *Fisher v. Roe,* 263 F.3d 906, 915 (9th Cir. 2001)).

*v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

Applying the federal law factors leads to the same conclusion reached in the state courts. Chea argues, and there is no dispute, that extrinsic material was actually received by the juror from her son. It is inappropriate, however, for Chea to argue on habeas review that the material was "introduced into deliberations" or that it was used "to overcome juror doubt" so as to demonstrate that the verdict was injuriously affected. We have held that

> A long line of precedent distinguishes between juror testimony about the consideration of extrinsic evidence, which may be considered by a reviewing court, and juror testimony about the subjective effect of evidence on the particular juror, which may not.

*Sassounian,* 230 F.3d at 1108 (citing *Rodriguez v. Marshall,* 125 F.3d 739, 744 (9th Cir.1997)); *Dickson v. Sullivan,* 849 F.2d 403, 406 (9th Cir.1988) ("the question of prejudice is an objective, rather than a subjective one"); *United States v. Bagnariol,* 665 F.2d 877, 884–85 (9th Cir.1981) ("Jurors may testify regarding extraneous prejudicial information or improper outside influences. They may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts."). Accordingly, we must determine from the facts found in the state court whether the introduction of extrinsic evidence *objectively* constituted constitutional error. We find it does not.

The improper contact between the juror and her son occurred very early in her jury service. She told another juror early in the trial that her son had seen Chea kickboxing. A third juror also appears to have known at least sometime prior to the deliberations. Although the extrinsic evidence was known by these jurors, the state court's findings establish that the jury as a whole never discussed and considered the extrinsic information. The state court also found that to the extent the jury discussed that Chea knew how to kickbox, that information was gleaned from the trial evidence. Whether Chea had tattoos was independently apparent to the jurors. In short, as there was nothing in the extrinsic evidence that was not in the trial evidence, we find that Chea suffered no prejudice from the unusual circumstance that a juror's son was housed in the same jail as the defendant and asked his mother about the trial. In any event, Chea has not established that the extrinsic evidence had a substantial and injurious effect on the jury verdict. *Sassounian,* 230 F.3d at 1108.

AFFIRMED.