Eric Anthony **PARKER**, Petitioner—Appellant,

v.

Jeanne S. **WOODFORD**, Director, Respondent—Appellee.

No. 04–17518.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 2005.

Decided Feb. 6, 2006.

A. J. Kutchins, Esq., Berkeley, CA, for Petitioner–Appellant.

Laurence K. Sullivan, Esq., AGCA–Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before D.W. NELSON, RAWLINSON, and BEA, Circuit Judges.

## MEMORANDUM *

Eric Anthony Parker appeals the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254 and argues that the district court abused its discretion by denying an evidentiary hearing on his claims. We affirm in part, reverse in part, and remand with instructions to hold an evidentiary hearing on the ineffective assistance of counsel claim for failure to investigate and present a potential alibi defense.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Parker's petition can be granted only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Here, we are presented with a "post card" denial of Parker's habeas corpus petition by the California Supreme Court, so we assess "unreasonableness" by conducting an "independent review of the record." *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

Applying these standards, and considering the totality of the evidence, we hold that it was reasonable for the California courts to conclude the following:

█ (1) The trial court did not violate due process by relying upon the courtroom bailiff's statement suggesting that all jurors had properly deliberated as evidence that Parker had received a fair trial. *See Tracey v. Palmateer,* 341 F.3d 1037, 1044–45 (9th Cir.2003).

(2) Parker did not demonstrate prejudice from trial counsel's failure to alert the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

trial court to the possibility of misconduct by Juror DeLoach. Accordingly, the ineffective assistance claim predicated on this aspect of trial counsel's performance failed. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

(3) Parker did not demonstrate prejudice from trial counsel's failure to call Patricia Kincaid to impeach the trial testimony of Deron Kincaid. Accordingly, the ineffective assistance claim predicated on this aspect of trial counsel's performance failed. *See id.* at 687, 104 S.Ct. 2052.

Finally, Parker claims that trial counsel rendered ineffective assistance by failing to investigate and present an alibi defense. The record before us does not contain sufficient evidence on which to evaluate the reasonableness of the California court's application of clearly established federal law to this claim. And, for the following reasons, we conclude that the district court erred by denying Parker's petition on this ineffective assistance of counsel claim without holding an evidentiary hearing.

First, Parker did not "fail to develop" the factual basis for his claim. Rather, he sought diligently to develop the record pursuant to California habeas procedures but was denied that opportunity by the state court, so AEDPA does not preclude an evidentiary hearing. *Baja v. Ducharme,* 187 F.3d 1075, 1078–79 (9th Cir.1999); *see also Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Second, it is uncontroverted that, having summarily denied his petition, "the state trier of fact did not afford [Parker] a full and fair fact hearing," *Insyxiengmay v. Morgan,* 403 F.3d 657, 670 (9th Cir.2005) (quoting *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). Third, Parker has stated a "colorable claim," *id.* at 670, that counsel's fail-

ure to pursue a possible alibi defense was deficient and prejudicial, *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. If his allegations are true, Parker's case is governed by our decision in *Riley v. Payne,* where in similar circumstances we found that, "[e]ven under the narrow constraint of our review under AEDPA and the Supreme Court's precedent, . . . there was an unreasonable application of *Strickland.*" 352 F.3d 1313, 1323 (9th Cir.2003).

Therefore, Parker is entitled to an evidentiary hearing. *Insyxiengmay,* 403 F.3d at 670.

AFFIRMED in part, REVERSED in part, and REMANDED.

BEA, concurring in part, dissenting in part.

BEA, Judge.

I concur in Part I of the memorandum disposition. As to Part II, although I agree that Parker sought diligently to develop the record in state court and did not receive a "full and fair" fact hearing, I cannot concur in the majority's decision to remand for an evidentiary hearing.

A "district court's interpretation of AEDPA standards governing the grant or denial of an evidentiary hearing" is reviewed de novo. *Earp v. Ornoski,* 431 F.3d 1158, 1166 (9th Cir.2005). A district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Id.*

An evidentiary hearing on Parker's ineffective assistance of counsel claim is warranted only if he has alleged facts that, if proven, would establish both elements of the *Strickland* test: deficient performance and prejudice. *See Gonzalez v. Pliler,* 341 F.3d 897, 903 (9th Cir.2003). It is unnecessary here to consider whether Parker has alleged facts that, if proven, would establish prejudice because he has not al-

leged facts that, if proven, would establish deficient performance. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

Although counsel has a duty to investigate before making strategic decisions in a criminal case, counsel "of course ... need not interview every possible witness to have performed proficiently." *Riley,* 352 F.3d at 1318. Interviewing witnesses whose testimony is "generally known to counsel," for example, may be unnecessary. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. When counsel makes "strategic choices ... after less than complete investigation," such choices are "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S.Ct. 2052. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S.Ct. 2052.

Here, Parker cannot show failure to investigate, let alone deficient performance, with respect to potential witness Antoinette Green—the half-sister in defense of whom he was found to have ordered Freddie Williams shot. A private investigator working for the defense interviewed Green and conveyed her statements to Parker's counsel. Together with this private investigator, counsel then re-interviewed Green. During neither of these interviews did counsel or the private investigator ask Green if she had seen Parker on the afternoon of the crime, and the record is unclear as to whether the interviews took place before or after Parker suddenly "recalled" his purported alibi. Regardless of the interviews' timing, however, counsel could reasonably have concluded that Green would have mentioned anything she knew that might have helped Parker, including any possible alibi. Counsel was entitled to concentrate his efforts on eliciting from Green evidence that might undermine Parker's alleged motive for ordering Williams killed. *Cf. id.* at 699, 104 S.Ct. 2052 (holding that it was reasonable for counsel not to seek additional, potentially mitigating, character or psychological evidence after having interviewed family members of the defendant by phone without following up in person).

With respect to the remaining three potential witnesses—Lakeisha Wade, Betty Bello, and Ramont Johnson—their testimony was already "generally known to counsel." *Id.* at 691, 104 S.Ct. 2052. Through discovery materials from the prosecution, Wade's contention that minutes after the shooting she had spoken by telephone to Parker was known to counsel. Bello's testimony was cumulative of Wade's and, at any rate, would likely have been hearsay. Johnson's testimony was known to counsel from conversations with Parker himself.

Counsel's decision not to interview or present the testimony of Wade, Bello, and Johnson must be interpreted in light of his general knowledge of their possible testimony and in light of another critical piece of information: Parker "recalled" his alleged alibi only after counsel showed him the prosecution's discovery production, which contained Wade's statement. *See Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (explaining that whether counsel's investigation was reasonable requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time'"). By Parker's own admission, he never mentioned being at Geraldine Ford's apartment when, "shortly after" his arrest, counsel and the private investigator questioned him regarding his whereabouts at the time of the crime. To put it mildly, Parker's sudden "recollec-

tion" of his alibi detracts from the credibility of the defense he faults counsel for not pursuing. The circumstances surrounding this "recollection" distinguish his case from *Luna v. Cambra*, 306 F.3d 954 (9th Cir. 2002), and *Riley*—cases in which the defendants appear, from this Court's published opinions, to have claimed self-defense (*Riley*) or an alibi (*Luna*) throughout the pretrial period.[1] *See Riley*, 352 F.3d at 1319; *Luna*, 306 F.3d at 957–58.

In deciding whether to pursue and present an alibi defense, Parker's counsel could reasonably have weighed the strength of the potential alibi against its possible detrimental effect on Parker's defense. Taking as true the facts Parker now alleges, his alibi would have had several significant weaknesses: Green could not have placed Parker at Ford's house any closer than thirty minutes from the time of the crime; moreover, her credibility was diminished both because Parker ordered Williams' killing in her defense, and because, during her initial interviews with the defense team, she failed to mention seeing Parker at Ford's

apartment. Wade was vague as to how long after hearing shots she recalled speaking to Parker on the phone, and Bello's recollection of when she spoke to Wade was similarly vague. In light of Parker's belated, sudden, and suspect recollection of being with Johnson at the time of the crime, there was reason to fear Johnson's testimony would be untruthful and, as such, readily assailable on cross-examination. Had counsel decided to present an alibi defense, he would have risked inviting jurors to focus on these weaknesses in Parker's case at the possible expense of having them focus on weaknesses in the prosecution's case.[2] Thus, it was a reasonable tactical decision for counsel to adopt a trial strategy focused on exposing weaknesses in the prosecution's case, to which end the record demonstrates he conducted vigorous cross-examination. *Cf. Luna*, 306 F.3d at 966 (suggesting that, with respect to *Strickland*'s prejudice prong, weaknesses in the prosecution's case may tend to support an ineffective assistance

**1.** As the State's answer brief noted, these cases are also distinguishable because they involved attorneys who "failed to call named witnesses to support [a] defendant's otherwise uncorroborated trial testimony, leaving the impression that the alibi [in *Luna*, or theory of self-defense, in *Riley*,] was a self-serving fabrication." In Parker's case, by contrast, defense counsel did not fail to present alibi witnesses after arguing to the jury that his client had an alibi such witnesses could corroborate. Instead, he avoided creating the expectation of alibi witnesses and called five witnesses who testified on issues unrelated to an alibi defense. Accordingly, the jurors in Parker's case would not have noticed counsel's failure to call Green, Wade, Bello, and Johnson, let alone interpreted this failure as evidence that arguments advanced in Parker's defense were suspect. *Cf. Riley*, 352 F.3d at 1319 (holding counsel rendered deficient performance for failing to interview a witness who might have corroborated the defendant's self-defense story in light of the fact that

counsel "called only [the defendant] as a defense witness"); *Luna*, 306 F.3d at 966 (stressing, in assessing prejudice, that Luna's trial testimony that he was home sleeping at the time of the crime constituted "the whole of his defense").

**2.** Indeed, given that Ford's apartment was only a five-minute drive from the crime scene, presenting Parker's desired alibi defense might even have *hurt* his case by placing him in the area near the time of the crime. (The record is unclear, however, as to whether counsel knew the proximity of Ford's apartment to the crime scene.) Moreover, in light of the fact that the prosecution's four eyewitnesses—all of whom had given the police statements inculpating Parker at the time of the crime—suffered "memory lapses" by the time of trial, counsel might have worried that presenting readily impeachable alibi witnesses would lead the jury to conclude Parker was manipulating witnesses.

claim, but stating nothing to undermine the possibility that weaknesses in the prosecution's case may cut the other way in an assessment of whether counsel rendered deficient performance).

Accordingly, it was not an abuse of discretion for the district court to deny Parker an evidentiary hearing. I would affirm without reservation the district court's decision.