# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OLOTH INSYXIENGMAY,
            *Petitioner-Appellant,*

v.

RICHARD MORGAN,
            *Respondent-Appellee.*

No. 02-36017

D.C. No.
CV-00-05500-RJB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted
October 4, 2004—Seattle, Washington

Filed March 30, 2005

Before: Dorothy W. Nelson, Stephen Reinhardt, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Reinhardt

**COUNSEL**

Nancy D. Tenney and Laura E. Mate, Federal Public Defender's Office, Seattle, Washington, for the petitioner-appellant.

Christine O. Gregoire and John J. Samson, Office of the Washington Attorney General, Olympia, Washington, for the respondent-appellee.

---

**OPINION**

REINHARDT, Circuit Judge:

Oloth Insyxiengmay was convicted of two counts of murder in the first degree and two counts of assault in the first degree for an attack on four high school teens who egged his gang's hangout. Following his conviction and a series of appeals in the Washington state courts, Insyxiengmay petitioned the district court for a writ of habeas corpus. He now contends that the district court erred in dismissing three of the six claims on the ground that the claims were procedurally barred and denying his Sixth Amendment claim that he and his counsel were improperly excluded from an *in camera* hearing regarding a confidential informant. The three claims that the district court dismissed on procedural grounds are that the trial court failed to give a manslaughter instruction (claim 1), that a non-testifying co-defendant's statement inculpating Insyxiengmay should not have been received in evidence (claim 2), and that the prosecution's key witness's adverse polygraph examination results should have been admitted (claim 6). Because Insyxiengmay timely presented the claims to the Washington Supreme Court as federal issues, and because his allegations regarding his Sixth Amendment claim necessitated an evidentiary hearing in federal court, we reverse the district court's dismissal of his petition and remand for consideration of his claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Crime*

On August 24, 1994, four high school boys drove down a Tacoma, Washington street throwing eggs at houses. Some of those eggs splattered on "the snake house," a hangout for a local gang called the Original Loco Boyz. Oloth Insyxiengmay, Nga Ngoeung, and Soutthanom Misaengsay[1] were associated with the gang. All three were juveniles in 1994; Insyxiengmay was fifteen years old.

Insyxiengmay, Ngoeung, and Misaengsay were outside the snake house during the egging. Believing that the attack was gang-related, Insyxiengmay entered the house and grabbed the owner's rifle. All three boys scrambled into a silver Buick and, with Ngoeung driving, proceeded to follow the other car. According to Misaengsay, it was Insyxiengmay who put the rifle out of the window and fired at the other boys' car. The driver and front seat passenger of that car were shot and killed.

The three returned to the snake house after the shootings. Insyxiengmay handed the rifle to Wendy West, the only person present in the house, and told her to get rid of it. Insyxiengmay said, "We shot them up. We shot them up. They threw eggs at us, the Rickets. We shot them up." West testified that Insyxiengmay was highly upset: "He's usually smiling and happy, and he was almost — he was real fearful. He was almost in a state of tears." Meanwhile, she said, Misaengsay was "smirking and almost laughing."

Insyxiengmay was arrested on September 1, 1994. After being advised of his rights, he agreed to make a statement. He

---

[1]The trial transcript refers to the defendants by their gang names which, respectively, are Tiny Snoopy, Shamrock, and Candyman. However, we will refer to them by their legal surnames.

admitted to being in the car during the shootings, but he denied being the shooter. He accused a fourth person, known as J-Rock, instead.[2]

Ngoeung was arrested two days later on September 3, 1994, based upon information as to his whereabouts provided by a confidential informant. Ngoeung confessed to police that he drove the car during the shootings.

Misaengsay was also arrested on September 3rd. He initially told the police that a fourth person present in the car was the one who was responsible for the shootings. However, when the police falsely told him that Insyxiengmay had implicated him as the shooter, he changed his statement to indicate that no fourth person was present and instead accused Insyxiengmay of being the shooter. Misaengsay subsequently entered into a plea agreement in which he agreed to testify and to plead guilty in exchange for the state's promise not to charge him as an adult. Subsequently, Misaengsay pled as a juvenile. Although Insyxiengmay was fifteen at the time and had no prior convictions, he was eventually tried along with Ngoeung as an adult.

## B. Confidential Informant

During pretrial motion hearings, the prosecutor revealed to defense counsel that a confidential informant had provided information leading to Ngoeung's arrest and that the informant was a passenger in one of the two cars stopped on September 3rd when Ngoeung was arrested. The prosecutor further informed counsel that the arresting deputy's report regarding the arrest of Ngoeung falsely stated that he was on

---

[2]The Washington Court of Appeals stated that Insyxiengmay named a person known as "Sin Dog" as the fourth person. It does appear that Insyxiengmay named "Sin Dog" at some point during the investigation, but the statement Insyxiengmay gave to the police (the statement made available to the jury at trial) names "J-Rock" as the fourth person.

routine surveillance when he located Ngoeung's car. In truth, the deputy "got a phone call from one of the individuals that was in the car with these people traveling down the freeway." Because the prosecutor was not willing to reveal the identity of the informant, defense counsel moved for disclosure. The state judge subsequently held an *in camera* hearing to discuss the potential testimony of the confidential informant. The only witness who appeared at the *in camera* hearing was the deputy sheriff who arrested the defendants. The judge barred defense counsel from the hearing, refused to take his written questions so that they could be read to the witness by the court, did not compel the confidential informant to appear at the hearing, and issued a protective order prohibiting defense counsel from discussing the existence of the confidential informant with Insyxiengmay and his co-defendant.

Deputy Cassio, the only witness at the *in camera* hearing, was the arresting officer who had falsified his report of the arrest. He testified at the hearing that he received a phone call from Kong Prak, an informant, on the day of the arrest alerting him to Ngoeung's location. Cassio informed the court that, like the defendants, Prak was a member of the Original Loco Boyz and had regularly provided reliable information regarding the "activities of different members of th[e] gang." The trial court did not question Cassio about what information Prak had provided regarding the shootings or whether, to his knowledge, Prak had information that could be helpful to the defense. The court asked only whether, "to [Cassio's] knowledge, [Prak was] present at the snake house during the time surrounding the events when this murder occurred?" Following the *in camera* hearing, the court announced that it had determined that the confidential informant could not provide any information that would be of assistance or benefit to the defendants.

## C. *The Trial*

The case against Insyxiengmay proceeded to trial. Insyxiengmay contends that during the trial, the judge erroneously

admitted a statement by one of Insyxiengmay's co-defendants which implicated Insyxiengmay, refused to admit the adverse polygraph examination results of the state's key witness, Misaengsay, and failed to give a manslaughter instruction. Insyxiengmay did not testify in his own defense, having waived his right to do so, although he sought unsuccessfully to rescind the waiver at a later point in the trial.

The jury rejected the charges of premeditated murder against Insyxiengmay, but found him guilty of two counts of murder in the first degree, based upon the element of extreme indifference to human life, and two counts of first degree assault. Ngoeung was convicted of two counts of aggravated first degree murder and two counts of first degree assault.[3] Insyxiengmay was sentenced to over 72 years in prison.

On August 18, 1998, Insyxiengmay timely appealed his conviction and sentence to the Washington Court of Appeals. The court of appeals affirmed the conviction and the Washington Supreme Court summarily denied further review on June 1, 1999. The mandate issued on June 17, 1999.

## D. State Habeas Proceedings

On May 31, 2000, Insyxiengmay, acting *pro se*, initiated his first personal restraint petition ("PRP") in the Washington Court of Appeals. In that petition, he argued that (i) the trial judge improperly ordered him to serve his sentences consecutively; (ii) the trial judge gave the wrong burden of proof instruction; (iii) he had been denied his right to a speedy trial as a result of the joinder of his trial with his co-defendant's; (iv) he had been denied his constitutional right to a unanimous verdict; and (v) he had been denied his constitutional due process right to full discovery.

---

[3]Ngoeung was also convicted of taking a motor vehicle without the owner's permission.

Approximately two weeks after filing his first PRP (and while it was still pending), Insyxiengmay filed a second PRP with the Washington Court of Appeals. In that petition, he raised four additional claims: (i) his Sixth Amendment right was violated when polygraph evidence of one of the state's witnesses was excluded by the trial judge; (ii) the Confrontation Clause was violated when a non-testifying co-defendant's statement implicating Insyxiengmay was received in evidence; (iii) the trial judge improperly denied his motion to sever his trial from his co-defendant's; and (iv) the trial judge failed to give a manslaughter instruction. Insyxiengmay signed the second petition on Sunday, June 18, 2000, and gave it to a prison official for filing with the court. However, it was not received by the clerk's office until Tuesday, June 20, 2000. As the mandate had issued on June 17, 1999, Insyxiengmay had until Monday, June 19, 2000, to file any PRPs. His petition was deemed "filed" one day late.

The court of appeals dismissed Insyxiengmay's second PRP on July 27, 2000. Explaining its decision, the court stated:

> A personal restraint petition cannot be used to relitigate issues already decided on appeal. *In re Lord*, 123 Wn.2d 296, 329 (1994). Nor can this court consider a petition filed more than one year after the filing of the mandate disposing of the petitioner's appeal. RCW 10.73.090(1), (3)(b). Insyxiengmay filed this petition after that one-year period expired.

While the court noted in the opinion that Insyxiengmay's first petition was under consideration, it did not discuss whether it should have construed Insyxiengmay's second PRP as an amendment to the timely-filed first PRP.

Insyxiengmay appealed the dismissal of his second PRP to the Washington Supreme Court through a motion for discretionary review. He attached a copy of his second PRP to that

motion. On November 11, 2000, the Washington Supreme Court denied the motion on the ground that his second PRP was not filed within one year after his conviction became final.

A few days later, the court of appeals dismissed the first PRP on November 20, 2000 because "Insyxiengmay had not demonstrated any error that entitles him to relief." The court did not discuss any of the issues raised in the second PRP, nor did it discuss its dismissal of that PRP.

Insyxiengmay timely moved the Washington Supreme Court for discretionary review of the dismissal of his first PRP, but that motion was denied on April 11, 2001, on the ground that Insyxiengmay had not shown that the court of appeals erred in dismissing his first PRP.

### E.  Federal Habeas Proceedings

On August 31, 2000, after the second PRP was dismissed but prior to any state court decision on the claims submitted in the first PRP, Insyxiengmay, acting *pro se*, petitioned the district court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Insyxiengmay raised six issues in that petition. The district court dismissed it without prejudice on November 17, 2000, because some of the claims were still pending before the Washington courts at that time and were therefore unexhausted.

As noted, the Washington Supreme Court had dismissed all of Insyxiengmay's petitions by the end of April 2001. Having no additional petition in the Washington courts, Insyxiengmay received approval from the district court to amend his federal habeas petition, and he resubmitted it to the district court on February 12, 2002. Insyxiengmay argued in the amended petition that: (i) the trial court erred in failing to instruct the jury on the lesser included offense of manslaughter; (ii) the introduction of a non-testifying co-defendant's statement implicat-

ing Insyxiengmay violated the Confrontation Clause; (iii) the trial court violated his constitutional rights when it denied his motion to reopen to permit him to testify; (iv) his constitutional rights were violated when he and his counsel were excluded from a critical stage of trial (the *in camera* hearing), and when his counsel was barred from discussing the existence of the informant with him; (v) the testimony of the state's prime witness pursuant to a coercive plea agreement violated his right to a fair trial and due process; and (vi) his Sixth Amendment rights were violated when the polygraph evidence was excluded at trial. The district court adopted the magistrate's report and recommendation, and dismissed the petition with prejudice on the ground that claims 1, 2, and 6 were procedurally barred and claims 3 through 5 failed on the merits. The court dismissed the first claim on the ground that it was presented to the Washington Supreme Court as an issue of state law, not as a matter of federal law. The second and sixth claims were dismissed on the ground that they were not raised either on direct appeal or in the first PRP. The court made no mention of the second PRP. On the merits, the court rejected the third, fourth, and fifth claims on the ground that Insyxiengmay had not shown that the Washington Court of Appeals' ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Insyxiengmay appealed.

This Court granted a Certificate of Appealability on two questions: one, whether the district court erred in ruling that three of Insyxiengmay's claims were procedurally barred, and two, whether the *in camera* hearing violated Insyxiengmay's constitutional rights.

## II. STANDARD OF REVIEW

Because Insyxiengmay's application for habeas relief was filed after the effective date of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), our review is governed by AEDPA. *Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir. 2003). "Under AEDPA, [this court] may only disturb a state court's determinations of law if they were 'contrary to' or 'involved an unreasonable application of' clearly established federal law as determined by the United States Supreme Court." *Wade v. Terhune*, 202 F.3d 1190, 1195 (9th Cir. 2000) (citations omitted). In considering potential state court error, this court looks to the "last reasoned decision of the state court as the basis of the state court's judgment." *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002).

Subject to those limitations, we review *de novo* the district court's denial of a petition for habeas corpus. *Dubria v. Smith*, 224 F.3d 995, 1000 (9th Cir. 2000) (en banc). Additionally, "the district court's application of AEDPA, as well as its conclusion that the standards set forth in AEDPA are satisfied, is a mixed question of law and fact which we review *de novo*." *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). Thus, the court reviews *de novo* "a district court's decision to dismiss a habeas petition for procedural default." *Vang v. Nevada*, 329 F.3d 1069, 1072 (9th Cir. 2003).

## III.   DISCUSSION

### A.   *Procedural Default*

The State argues that Insyxiengmay's amended petition contains claims that were procedurally barred in the Washington state courts. It contends that Insyxiengmay is precluded from pursuing any of the claims he raised in the second PRP, including claims one, two, and six of his federal petition, because those claims were not timely filed with the state courts. The State also asserts that even if those claims were

timely filed, they were never fairly and fully presented to the Washington Supreme Court. Insyxiengmay disagrees.

The Washington courts dismissed Insyxiengmay's second PRP on the ground that it was filed one day after the statute of limitations expired. Insyxiengmay now challenges the procedural rule that Washington used to determine when a pleading or other matter from a *pro se* prisoner is deemed "filed."

The "trigger date" by which Insyxiengmay was required to file his second PRP was June 17, 2000, a Saturday. Under Washington law, that date was automatically extended to Monday, June 19, 2000. *See* Wash. Rev. Code § 1.12.040; Wash. R. App. P. 18.6. Because Insyxiengmay signed the second PRP on Sunday, June 18, 2000, and gave it to a prison official for filing, and the clerk's office received it on Tuesday, June 20, 2000, we may reasonably conclude that it was delivered to the prison official no later than Monday, June 19, 2000. Insyxiengmay argues that at the time he delivered his petition the rule in Washington regarding the date on which a prisoner's *pro se* petition is deemed filed was not clear, consistently applied, or well-established. We agree.

**[1]** State courts may decline to review a claim based on a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977). Federal courts hearing habeas petitions may not review state convictions, even for federal constitutional claims, if the state court judgment procedurally barring the petitioner's claims rests on an "independent and adequate" state law ground. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Procedural default, a particular type of adequate and independent state ground, "applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements." *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). Procedural default is an affirmative defense, and the *state* has the burden of showing that the default constitutes an adequate and independent ground. *Vang*, 329 F.3d at 1073; *Bennett v.*

*Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), *cert. denied*, 540 U.S. 938 (2003). Thus, it is the law of this circuit that the ultimate burden is on the State, not the petitioner, to show that a procedural state bar was clear, consistently applied, and well-established at the time the party contesting its use failed to comply with the rule in question. *See id.* at 583.

Insyxiengmay contends that in 2000, when he filed his second PRP, the date of filing rule with respect to pleadings, appeals or petitions from *pro se* prisoners was not clear, consistently applied, or well-established in Washington and therefore that his failure to comply with the rule does not constitute an adequate and independent state ground. *See Coleman*, 501 U.S. at 729 (stating a state procedural rule must be adequate and independent of federal law in order to bar federal habeas review); *Thomas v. Goldsmith*, 979 F.2d 746, 749 (9th Cir. 1992) (same). He avers that it was unclear in 2000 whether *pro se* prisoners' documents were deemed "filed" when they were received by the clerk's office or whether the mailbox rule applied, and they were deemed "filed" when they were delivered to prison officials for mailing.

Insyxiengmay points to two contemporaneous cases in which Washington appellate courts came to differing conclusions about the applicability of the mailbox rule, and thus about what date is properly deemed the date of filing with respect to *pro se* prisoners. He further points to the disagreement on that question in the recent Washington Supreme Court case resolving the dispute adversely to his position. *Compare State v. Hurt*, 27 P.3d 1276 (Wash. Ct. App. Div. III 2001) (holding that the mailbox rule applies to *pro se* prisoner's filings), *with In re Carlstad*, 80 P.3d 587 (Wash. 2003) (rejecting the mailbox rule for *pro se* prisoners' personal restraint petitions), *and State v. Robinson*, 17 P.3d 653 (Wash. Ct. App. Div. I 2001) (same). *See also State v. McLean (In re Carlstad)*, 80 P.3d at 593 (Sanders, J., dissenting) ("[T]he rules governing filing of collateral attacks under RCW 10.73.090, unlike the federal rules considered in *Houston[v.*

*Lack*, 487 U.S. 266 (1988)] . . . are not as clear and unambiguous in precluding adoption of the mailbox rule . . .").

**[2]** We agree with Insyxiengmay that, when he filed his second personal restraint petition in 2000, it was unclear whether Washington applied the mailbox rule to *pro se* prisoner filings, and thus whether the petition was deemed filed when Insyxiengmay delivered it to the prison official. In 1988, the United States Supreme Court adopted the mailbox rule for *pro se* prisoners litigating in federal courts. *Houston*, 487 U.S. at 266. By 2000, many states had followed the federal lead. *See, e.g.*, *Mayer v. State*, 908 P.2d 56 (Ariz. 1995) (adopting the mailbox rule); *In re Jordan*, 840 P.2d 983 (Cal. 1992) (same); *Haag v. State*, 591 So. 2d 614, 615-618 (Fla. 1992) (same); *Commonwealth v. Hartsgrove*, 553 N.E.2d 1299 (Mass. 1990) (same); *Smith v. Pennsylvania Bd. of Prob. & Parole*, 683 A.2d 278 (Pa. 1996) (same). *But see, e.g.*, *Hamel v. State*, 1 S.W.3d 434 (Ark. 1999) (refusing to adopt the mailbox rule); *Carr v. State*, 554 A.2d 778 (Del. 1989) (same). Had Insyxiengmay filed his petition in a federal court, there is no doubt that he would have had the benefit of the mailbox rule. *See Houston*, 487 U.S. at 266. Washington, however, had neither expressly adopted nor expressly rejected the mailbox rule in 2000. Critically, the State has offered no case or other relevant legal authority, stating when under that state's law, as of 2000, *pro se* prisoners' documents were deemed filed. All the cases cited by the State respond to general challenges to the statute of limitations, Wash. Rev. Code § 10.73.090, not to the question when a *pro se* prisoner's documents were considered "filed." Finally, the State offered no evidence of any kind that in 2000 the Washington clerks of court either deemed *pro se* prisoner petitions filed when they were delivered to prison officials or only when they were received in the clerk's office. Nor did it offer any evidence as to the practice of the Washington courts in accepting or rejecting pleadings from *pro se* prisoners that were delivered to prison officials by the filing date but were not received until afterwards in the clerk's office.

**[3]** The existence of the federal policy applying the mail-box rule to *pro se* prisoners' filings and the use of the mailbox rule by numerous other states, the absence of any case on that question in the Washington appellate courts and the absence of any evidence as to the practice of the Washington courts and their various clerks left the question of the applicability of the mailbox rule uncertain in 2000. Additionally, the fact that two divisions of the Washington court of appeals came to opposing conclusions about the existence of the mailbox rule for *pro se* prisoners' filings just a few months following the filing of Insyxiengmay's second PRP, ultimately necessitating a 2003 Washington Supreme Court opinion on the matter, demonstrates that considerable doubt existed as to whether the mailbox ruled applied at the time of the filing of Insyxieng-may's petition. Thus, the State has not met its burden of showing that Washington's procedural rule establishing the date of filing for *pro se* prisoners as the date on which the document is received in the clerk's office rather than the date on which it is received by prison officials, was clear, consis-tently applied, and well-established.[4] *Bennett*, 322 F.3d at 583. Accordingly, claims one, two, and six are not procedur-ally barred.

### B.   Exhaustion

**[4]** The State contends that even if the claims in the second PRP are not procedurally barred, they were not properly pre-sented to the Washington Supreme Court and are therefore unexhausted. Under AEDPA, a federal habeas petitioner must exhaust his claims in state court before coming to federal court. *See* 28 U.S.C. § 2254(b)(1)(A). The exhaustion doc-trine requires a petitioner to provide the state courts with one

---

[4]*Cockett v. Ray*, 333 F.3d 938 (9th Cir. 2003), is not to the contrary. In that case, unlike ours, the state met its burden of proving the existence of a procedural bar. The state in that case pointed to two earlier cases in which this Court had held that the procedural rule at issue was clear, con-sistently applied, and well-established. *Id.* at 943.

full opportunity to rule on his federal habeas claims before presenting those claims to the federal courts. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (requiring petitioners to give state courts "a *fair* opportunity to act on their claims," that is, "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" (emphasis in original)); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

**[5]** Exhaustion is determined on a claim-by-claim basis. "Only individual *claims*, and not the application containing those claims, can be procedurally defaulted under state law" pursuant to the adequate and independent state ground doctrine. *Artuz v. Bennett*, 531 U.S. 4, 9 (2000) (emphasis in original). A petitioner can satisfy exhaustion by either: (1) fairly and fully presenting each federal claim to the state's highest court or (2) showing that there is no state remedy available. *See Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, *see* 28 U.S.C. § 2254(c), (2) through the proper vehicle, *see Castille v. Peoples*, 489 U.S. 346, 351 (1989), and (3) by providing the proper factual and legal basis for the claim, *see Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly and fully present the legal basis of the claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001). In this circuit, the petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law. *See Lyons*, 232 F.3d at 668, 670. While the petitioner must refer to federal law in state court explicitly, exhaustion is satisfied once the petitioner makes that explicit reference even if the petitioner relies predominantly on state law before the state

courts. *See Jones v. Smith*, 231 F.3d 1227, 1231 (9th Cir. 2000).

The State argues that Insyxiengmay did not at any time fairly and fully present the three claims he now appeals to the Washington Supreme Court. It contends that he presented claim one on direct appeal, but that he presented it as a matter of state, not federal, law. It further argues that to the extent that he raised the three claims in his second PRP, they were not fairly and fully presented because they were not contained in the body of his brief, but in a separate attachment, the Appendix. The State argues that Washington law prohibits incorporation of issues by reference.

Following the denial of his second PRP by the Washington Court of Appeals on the ground that it was not timely filed, Insyxiengmay filed a motion for discretionary review in the Washington Supreme Court. In that motion, he presented the state supreme court with all three claims in an appendix which consisted of a full copy of his second PRP. The body of the motion dealt with the court of appeals' dismissal on the ground of timeliness. The appendix contained, *inter alia*, Insyxiengmay's arguments regarding the three claims that the state contends are not exhausted. All three arguments contained the requisite references to the pertinent provisions of the United States Constitution. Thus, Insyxiengmay clearly presented all three claims as federal issues to the Washington Supreme Court.

**[6]** The State argues that, because Insyxiengmay's discussion of the three claims does not appear in the body of the motion, Washington law prohibits their consideration. It asserts that Washington courts do not permit "incorporation" in motions, briefs, or petitions of material contained in the appendices to those documents. All the cases cited by the State in support of its argument involve briefs or other filings that raise issues by incorporation by reference of another document not before the appellate court, generally trial memo-

randa. *See, e.g.*, *State v. Kalakosky*, 852 P.2d 1064, 1072 n.18 (Wash. 1993). In other words, those cases prohibit incorporation of material that has *not* been filed with the court itself. *See id.* ("Only issues . . . argued to the appellate court are considered on appeal."). Here, in the appendix filed in the state supreme court along with his motion, Insyxiengmay presented extensive argument in support of all three claims as well as citations to the requisite authority and to relevant parts of the record. Accordingly, the claims were fairly and fully presented to the Washington Supreme Court.[5]

## C. *In Camera Hearing*

[7] Insyxiengmay challenges the trial court's decision to exclude him and his attorney from an *in camera* hearing regarding his request to be advised of the identity of the confidential informant and of any information the informant possessed that might be relevant to his defense. A defendant has a right guaranteed by the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment to be present at every critical stage of the proceedings. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970) (discussing confrontation clause); *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) (discussing due process clause). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 417 n.23 (1988) (citation omitted).

---

[5]Indeed, we question whether in order to exhaust the three claims it was even necessary for Insyxiengmay to file an appendix with the Washington Supreme Court discussing their merits. Because in his motion Insyxiengmay asked the Washington Supreme Court to allow the claims to proceed in the court of appeals, and the court declined the request, thus barring him from presenting the claims for review either to the court of appeals or the supreme court, any further duty to exhaust was excused. Under the circumstances, presenting any argument on the merits would have been, and was, futile.

Because the trial court permitted only the witness (the law enforcement officer to whom the confidential informant reported) and the prosecutors to be present at the hearing and did not allow defense counsel to submit questions for the witness, the Washington Court of Appeals concluded that "[f]ailing to notify the defendant of an in camera proceeding or to permit the defense counsel to submit questions to be asked of the informant is a violation of basic Sixth Amendment due process," citing *State v. Smith*, 677 P.2d 100, 105 (Wash. 1984). On this appeal, the State has not questioned the correctness of the state court of appeals' determination that Insyxiengmay's Sixth Amendment right was violated. Instead, it relies exclusively on that court's prejudice ruling.

No court that has reviewed this case has disagreed that the exclusion of the defense from the *in camera* hearing violated Insyxiengmay's Sixth Amendment rights. The district court dismissed Insyxiengmay's claim, however, "because petitioner [ ] failed to show [the confidential informant] had any information pertinent to petitioner's case." In doing so, the court failed to recognize that the facts in the record before it gave rise to the clear inference that the informant possessed material information. More important, it erroneously failed to afford Insyxiengmay an evidentiary hearing.

**[8]** We have previously outlined the procedure for district courts to follow when determining whether an evidentiary hearing is warranted post-AEDPA:

> Under the amended statutory scheme, a district court presented with a request for an evidentiary hearing . . . must determine whether a factual basis exists in the record to support the petitioner's claim. If it does not, and an evidentiary hearing might be appropriate, the court's first task in determining whether to grant an evidentiary hearing is to ascertain whether the petitioner has "failed to develop the factual basis of a claim in State court." If so, the court must deny a

hearing unless the applicant establishes one of the two narrow exceptions set forth in section 2254(e)(2)(A) & (B). If, on the other hand, the applicant has not "failed to develop" the facts in state court, the district court may proceed to consider whether a hearing is appropriate, or required under *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].

*Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). In *Townsend*, the Supreme Court concluded that a defendant is entitled to a federal evidentiary hearing on his factual allegations if:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

372 U.S. at 313. Assuming that the petitioner has not failed to develop his claim and can meet one of the *Townsend* factors, "[a]n evidentiary hearing on a habeas corpus petition is required whenever petitioner's allegations, if proved, would entitle him to relief." *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995) (citations omitted).[6]

---

[6]Although it appears that in order for a petitioner to show that he has "not failed to develop his claim" he will in most cases have had to satisfy one of the *Townsend* factors, we recognize that our precedent requires that after meeting the "has not failed" requirement, the petitioner must proceed to satisfy *Townsend*. However, in such instances, meeting the second part of the test will ordinarily be only a formality.

The petitioner's allegations need only amount to a colorable claim. *See Beaty v. Stewart*, 303 F.3d 975, 993 (9th Cir. 2002) (citing *Townsend*, 372 U.S. at 313); *see also*, *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001) ("Where a petitioner raises a colorable claim [to relief], and where there has not been a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing."). In sum, for a post-AEDPA petitioner to receive an evidentiary hearing in federal court, he must first show that he has not failed to develop the factual basis of the claim in the state courts: if he has failed, he must meet one of the two narrow exceptions stated in the statute. *See* 28 U.S.C. § 2254(e)(2)(A) - (B). Then he must meet one of the *Townsend* factors and make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief.

**[9]** Insyxiengmay did not "fail to develop" the factual basis for his Sixth Amendment claim in the state courts. Under AEDPA, "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000) (citing *Baja*, *supra*, with approval). Fault cannot be attributed to Insyxiengmay because both he and his counsel were barred from the *in camera* hearing, and the court prohibited counsel from informing him of it, as well as of the existence of the confidential informant.

Fault also cannot be attributed to Insyxiengmay's counsel. Counsel attempted to obtain information regarding the State's confidential informant and his knowledge of the facts. The trial court precluded him from speaking with his client about the informant, excluded him from the hearing, and refused to allow him to submit questions for the court to ask the informant. Thus, neither Insyxiengmay nor his counsel failed to develop the factual basis for the claim. Because, through no fault of his own, Insyxiengmay was not afforded a full and fair hearing by the state court, he is entitled to an evidentiary

hearing if he has presented a colorable claim that he was prejudiced by the Sixth Amendment violation found by the Washington courts. *See Baja*, 187 F.3d at 1078.

**[10]** Insyxiengmay alleges that the informant possessed "information substantial to his defense." At the *in camera* hearing, Deputy Cassio described having a "working relationship" with informant Prak, who had provided information "with regards to the activities of different members of" the defendants' gang. Although it is unclear precisely what the extent of the relationship was between the informant and the deputy, and what information the informant may have contributed to the shootings investigation, apparently the relationship was close enough that the deputy felt compelled to falsify his police report to exclude any reference to Prak. It was evident from the *in camera* hearing that the informant had spent time with all of the defendants after the shootings and presumably had conveyed information from them regarding the criminal occurrence to Deputy Cassio. Indeed, the informant was with Insyxiengmay's co-defendant at the time of his arrest. Prak knew both Insyxiengmay and the others involved in the shootings well and may also have obtained information from other gang members regarding the criminal conduct at issue. In short, the confidential informant was an individual who was in a position to provide highly relevant information to the defense.

**[11]** Given all the circumstances, it was unreasonable for the state courts to assume that the informant did not possess information that could have materially benefitted the defendant. The facts suggest otherwise. Insyxiengmay has alleged a colorable claim of prejudice — a claim that he was precluded from developing at the state-court hearing. He is entitled to an evidentiary hearing.[7]

---

[7]Insyxiengmay was *pro se* in the district court. On appeal, we appointed counsel. Counsel filed Motions to Enlarge Record on Appeal that included an affidavit recently obtained from confidential informant Prak. The affidavit sets forth exculpatory material of which Prak had knowledge at the time of the *in camera* hearing. Because we may reverse without even considering the affidavit, we deny the motions.

## IV. CONCLUSION

With respect to the manslaughter instruction (claim 1), the admission of the guilty plea (claim 2), and the exclusion of the adverse polygraph evidence (claim 6), we reverse because the claims are exhausted and are not procedurally barred. We remand those claims to the district court for a resolution on the merits. We also remand the Sixth Amendment claim to the district court for an evidentiary hearing on the question of prejudice.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS DECISION.**