**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTONIO GONZALEZ,
        *Petitioner-Appellant,*

v.

MIKE KNOWLES, Warden,
        *Respondent-Appellee.*

No. 06-17054

D.C. No.
CV-04-00967-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
December 3, 2007—San Francisco, California

Filed February 6, 2008

Before: Robert E. Cowen,* Michael Daly Hawkins and
N. Randy Smith, Circuit Judges.

Opinion by Judge Cowen;
Dissent by Judge Hawkins

---

    *The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

1725

**COUNSEL**

Richard Such, Esq., Palo Alto, California, for the appellant.

Pamela K. Critchfield, Deputy Attorney General, San Francisco, California, for the appellee.

**OPINION**

COWEN, Circuit Judge:

Appellant Antonio Gonzalez was convicted in California state court of the sexual molestation of a minor. He appeals from the District Court's denial of his 28 U.S.C. § 2254 habeas petition, raising claims of due process and ineffective assistance of counsel. Because none of these claims entitle Gonzalez to any relief, we affirm.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In July 1998, Gonzalez was convicted of one count of being a "resident child molester,"[1] four counts of child molestation,[2] and two counts of indecent exposure. At the time, Gonzalez resided with his brother's family. His brother had three children, Bernice (then aged 13), Zulema (10) and Guillermo (8).

On April 3, 1998, the children came home from school early. In their parents' bedroom, they found Gonzalez's clothing and some of Bernice's and Zulema's bras and panties strewn on the floor. Some of the panties had been stretched and torn. The children were scared and ran out of the house. When they returned a few minutes later, the clothing and undergarments were gone. Soon thereafter, they discovered

---

[1] Conviction of this charge requires proof that one resides in the same home as the minor child and, over a period of time in excess of three months in duration, commits three or more acts of "lewd or lascivious conduct" with a child under the age of 14. Cal. Penal Code § 288.5(a). A touching of the minor's body suffices as a predicate act under this statute if it is willfully committed "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the actor]." Cal. Penal Code § 288(a).

[2] The individual child molestation counts were also premised on California Penal Code § 288(a).

Gonzalez, fully clothed, in a closet in the garage. While the sisters were outside of the garage, Gonzalez exposed his penis to Guillermo and asked him to touch it. Guillermo refused.

The sisters then returned and accused Gonzalez of ripping their undergarments. Gonzalez denied doing so, but offered Bernice $20 if she would not tell her parents about the incident. Bernice told him to leave, but he asked her to get his hat from inside the house. She went to do so; Zulema was left alone with Gonzalez. Zulema again asked about the underwear. Gonzalez responded by exposing himself to her. He then grabbed her hand and pulled it towards his penis. Zulema screamed, pulled her hand away, and ran out of the garage. She immediately told Bernice what had happened. The children told their parents about the incident later that day.

At trial, Zulema testified that Gonzalez had touched her inappropriately on five or so occasions in the three years preceding the April 1998 incident. In particular, she claimed that he had twice grabbed her and stroked her breasts, once touched her in the groin area, and twice patted her on the buttocks. Each time, Zulema said that she did not like the touching and immediately removed Gonzalez's hands from her body and/or told him not to touch her in that way. However, she did not tell her parents about these incidents because she was afraid her mother would hit her.

The trial court found that the prior touchings of Zulema's breasts and groin were committed with the requisite lewd intent, but that the pats of the buttocks were not. Gonzalez was convicted of all counts following an one-day bench trial. Because he had a prior conviction for assault with a deadly weapon, the judge doubled Gonzalez's sentence, *see* Cal. Penal Code § 1170.12(c)(1), added a five-year enhancement, *see* Cal. Penal Code § 667(a)(1), and imposed a total sentence of 18 years and 4 months.

Richard Such, an attorney with the California First District Appellate Project, was appointed to represent Gonzalez for

purposes of his appeal. The state appeals court affirmed Gonzalez's conviction, but reversed the finding that his prior conviction counted as a "strike" requiring the doubling of his sentence and the five-year enhancement. The California Supreme Court denied review.

On remand, Gonzalez sought to have Such appointed to represent him, but the trial court denied the request and appointed him a private defender. Following this denial, Such wrote a lengthy letter to Armando Garcia, new counsel, summarizing the results of his investigation into Gonzalez's background. Such informed Garcia that members of Gonzalez's family were sympathetic to his case and were willing to testify, and advised Garcia to obtain a psychiatric evaluation for Gonzalez. Such indicated that none of Gonzalez's family members thought he was mentally ill, but because Gonzalez had apparently sustained a "blow to the head" at some unknown time in the past, Such posited there might be "a possibility of brain damage." ER at 123. Garcia did not call any witnesses at sentencing, nor did he have Gonzalez evaluated.

At re-sentencing, Garcia argued that Gonzalez did not have any prior "strikes,"[3] had a history of alcohol abuse, and the fact that Gonzalez was under the influence when he committed the acts in question all mitigated his culpability. The court found these arguments unavailing and sentenced Gonzalez to 16 years on the "resident child molester" count. The sentences on the remaining counts were stayed.

Gonzalez again appealed. The state appellate court vacated his conviction as to the individual counts of child molestation, reasoning that Gonzalez could not be convicted of the "resident child molester" charge and of the separate instances of

---

[3]Although the state did not pursue retrial on counting Gonzalez's prior assault conviction as a "strike" for sentencing purposes, it is undisputed that Gonzalez nevertheless had a number of prior convictions, including a misdemeanor weapons charge, and two instances of indecent exposure.

molestation based on the same conduct. However, because the sentences on the vacated counts had been stayed by the trial court, the California Court of Appeal deemed re-sentencing unnecessary and affirmed the sentence. The California Supreme Court again denied review.

Gonzalez unsuccessfully petitioned for post-conviction relief in the California courts. He then sought federal habeas relief, but the District Court denied the petition on the merits. Gonzalez timely appealed, and the District Court granted a certificate of appealability on four issues: (1) sufficiency of the evidence; (2) violation of due process arising out of the denial of the motion to appoint desired counsel at re-sentencing; (3) ineffective assistance of counsel; and (4) due process violation based on reconsideration of aggravating factors at re-sentencing.

## II.  DISCUSSION

We exercise jurisdiction pursuant to 28 U.S.C. § 2253. Our review of a district court's denial of a § 2254 petition is *de novo*. *Schell v. Witek*, 218 F.3d 1017, 1022 (9th Cir. 2000) (en banc). Federal habeas relief may be granted on a claim previously adjudicated by the state court only if the adjudication "was contrary to" or "involved an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1). The parties do not dispute that all of Gonzalez's claims are exhausted and ripe for our review. We address each claim in turn.

### A.  Sufficiency of the Evidence

Gonzalez claims that there was insufficient evidence that he committed the prior touchings of Zulema with the requisite lewd intent. The California Court of Appeal rejected this claim on the merits. The standard of review on a sufficiency of the evidence claim is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Schell*, 218 F.3d at 1023. All conflicting inferences are presumed to have been resolved in favor of the prosecution. *Schell*, 218 F.3d at 1023.

**[1]** The state trial court did not violate Gonzalez's due process rights by inferring lewd intent for the prior touchings from the April 1998 incident. *See Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) ("admission of 'other acts' evidence . . . will violate due process only when 'there are *no* permissible inferences the jury may draw from the evidence' ") (emphasis in original) (internal citation omitted). Errors of state evidentiary law do not entitle one to federal habeas relief unless the alleged error "so fatally infected the proceedings as to render them fundamentally unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Here, it is not clear that consideration of the 1998 incident was error at all, since the California rules of evidence expressly allow the admission of the defendant's other bad acts for purposes of proving intent or motive, as occurred here. Cal. Evid. Code § 1101(b).

**[2]** The statute at issue requires acting with the "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the defendant or the child." Cal. Penal Code § 288(a). Gonzalez contends that because the alleged touchings of Zulema's chest and groin occurred during "a wrestling type of play," Appellant's Brief at 22, and because Zulema did not immediately report them to her parents, the incidents were wholly innocent and the requisite intent was lacking. The state court rejected this claim, finding that Zulema's testimony that she immediately recognized the touchings as improper, struggled to break free of Gonzalez, and asked him not to touch her that way was sufficient to sustain Gonzalez's conviction. We will not disturb this well-reasoned conclusion, as we hold that the state court's rejection of Gonzalez's sufficiency of the evidence claim was not contrary to, nor involved

an unreasonable application of, controlling Supreme Court precedent.

### B.   Appointment of Counsel

Next, Gonzalez argues that the trial court's refusal to appoint him his counsel of choice on re-sentencing warrants habeas relief. In particular, he contends that he had a right to consideration of his preference for counsel and that the trial court violated his due process rights by failing to exercise its discretion in appointing him the counsel of his choice.

Initially, as the state appellate court rejected this claim based on its conclusion that the denial of the motion was not an abuse of discretion under California law, the claim is plainly outside our purview. *See Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) (federal habeas court may not pass on state court's resolution of state law question unless it is apparent that the resolution "is an obvious subterfuge to evade the consideration of a federal issue"). It is axiomatic that only constitutional claims are cognizable on federal habeas. 28 U.S.C. § 2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"). Accordingly, Gonzalez's appointment of counsel claim is simply not cognizable on federal habeas unless the state court's discretionary appointment ran afoul of settled constitutional principles. *See Schell*, 218 F.3d at 1025 (noting that "[a] particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect"); 28 U.S.C. § 2254(a). It did not.

**[3]** The Sixth Amendment guarantees criminal defendants the right to effective representation, but indigent defendants do not have a constitutional right to be represented by their counsel of choice. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). As such, Gonzalez's reliance on choice-of-counsel jurisprudence is entirely unavail-

ing. Gonzalez concedes this, but nevertheless contends that his preference to be represented by an attorney with whom he had an established relationship was entitled to consideration. However, the Sixth Amendment encompasses no guarantee of a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13 (1983) (internal quotation marks omitted). Therefore, since Gonzalez was appointed *an* attorney who was at least facially competent, no Sixth Amendment violation occurred as a result of the court's appointment of someone other than Gonzalez's first-choice counsel.[4]

[4] Gonzalez's due process argument also fails. Absent allegations that Gonzalez's appointed counsel had an irreconcilable conflict sufficient to arise to a *per se* denial of counsel, *see Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982), the standards applicable in substitute counsel cases are inapplicable here. Even if they did apply, the trial court's actions, as detailed *infra*, in adjudicating Gonzalez's appointment of counsel request were nevertheless entirely proper. *See King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992) (no constitutional violation where court undertook brief inquiry into appointment of counsel request but denied it); *cf. Hudson*, 686 F.2d at 829 (failure to undertake *any* inquiry into reasons for defendant's motion to replace counsel may be constitutionally impermissible). Furthermore, contrary to Gonzalez's asser-

---

[4]Of course, if appointed counsel's assistance proved to be constitutionally deficient and prejudicial, Gonzalez may be entitled to habeas relief. But, this is a distinct inquiry, *see* discussion, *infra* Section II.C, which should not be conflated with the instant issue of whether the *initial* appointment of counsel passes constitutional muster. Hindsight allegations of counsel's *subsequent* deficient performance should not be used to color the threshold question before us.

Additionally, we cannot agree with the dissent's claim that "the risk of ineffective assistance could have been easily removed had the trial court simply appointed Such to represent Gonzalez at re-sentencing." The appointment of a defendant's desired counsel who is familiar with the facts of the case is certainly not a panacean assurance that the counsel's representation will be constitutionally adequate.

tion, the trial court did not fail to "truly exercise[ ] its discretion" in denying his request to appoint Such as re-sentencing counsel, Appellant's Brief, at 34; it merely exercised its discretion in a manner contrary to Gonzalez's wishes. *Cf. Schell*, 218 F.3d at 1025 n.7 (concluding state court failed to exercise its discretion where it ignored petitioner's motion for appointment of counsel and never ruled on the request).

[5] On remand, Such sought to be appointed as Gonzalez's counsel and filed a motion to this effect. After reviewing the motion, the trial court held a hearing on the matter, and allowed Such to be heard. Gonzalez, assisted by an interpreter, was also present at the proceeding, during which the following exchange took place:

> THE COURT: Mr. [Such], I have reviewed your ex-parte application. And, other than the fact of the defendant's desire to have you represent him because of the relationship that has developed, is there anything about this, what would seem to me to be a fairly straightforward court trial on the prior [conviction], that would indicate we ought to take this rather unusual step?

> MR. [SUCH]: Uh-huh. Well, there's my familiarity with the issues that concern the sufficiency of the evidence of that prior conviction, and also the validity of it. In addition to that, I won't have to go into this, but in the courts of appeal we raised both on appeal, and a habeas corpus issue of the competence of Mr. Gonzalez's previous attorney. So I think that's an additional reason why some other attorney should be appointed.

> THE COURT: Okay. And, as you may or may not know, when matters are remanded under circumstances like this, if the private defender is appointed, it is by no means certain that it would be assigned to

the same attorney. I think it's very frequently a different attorney is assigned. And in a case like this where there is a potential issue of ineffective assistance, I would strongly suspect that they would go out of their way to assign it to someone else.[5] So, submitted?

MR. [SUCH]: Yeah.

. . .

THE COURT: All right. Then I'm going to deny the request. I'm satisfied that the defendant can be competently and appropriately represented by the private defender program. I will at this time appoint the private defender . . .

ER at 106-08. It is clear from this record that the trial court duly considered Gonzalez's appointment request but nevertheless denied it because the judge felt that no great advantage would have been gained by having Such as counsel for what was perceived to be a straightforward proceeding, and not, as the dissent posits, merely because the appointment would be a departure from the judge's usual practice. Under these circumstances, we cannot say that the denial violated Gonzalez's constitutional rights.

[6] It warrants emphasis that it is not our role on federal habeas review to pass upon the wisdom of a state court's discretionary decisions. It is of no moment that we may disagree with the court's reasons or that we may have made different choices ourselves; "our *only* concern when reviewing the constitutionality of a state-court conviction is whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Schell*, 218 F.3d at 1025 (quoting 28 U.S.C. § 2254(a)) (emphasis in original). Indeed,

---

[5]A different private defender was assigned on remand.

we are wholly without authority to grant habeas relief unless those state court actions violated the petitioner's constitutional rights, *and* unless the state appellate court's rejection of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In this case, the trial court's actions were reasoned and deliberate, and the state appellate court's decision did not run afoul of the Constitution. We are thus precluded from granting Gonzalez relief.

### C.   Ineffective Assistance of Counsel

Finally, Gonzalez contends that his appointed private defender was constitutionally ineffective. Ineffective assistance of counsel claims are governed by the two-prong analysis articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong, a habeas petitioner must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness. *Id.* at 687-89. To satisfy the second prong, petitioner must establish that he was also prejudiced by counsel's substandard performance. *Id.* at 687. One is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different. *Id.* at 694.

Here, the California Court of Appeal summarily denied Gonzalez's habeas petition, and the California Supreme Court denied review. In such circumstances, we must conduct an independent review of Gonzalez's claims to determine whether the state court's denial passes § 2254(d)(1) muster. *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002).

At the outset, even assuming Gonzalez exercised sufficient diligence in seeking to develop the factual basis for his Sixth Amendment claims in state court, no evidentiary hearing is warranted under the circumstances. All of Gonzalez's claims

are grounded in speculation; he has not presented, nor has he even alleged, the existence of any quantum of mitigating evidence upon which we can conclude entitle him to an evidentiary hearing. *Cf., e.g.*, *Pizzuto v. Arave*, 280 F.3d 949, 990 (9th Cir. 2002) ("based on the state court record and the affidavits submitted by [petitioner], he has raised a colorable claim" justifying an evidentiary hearing); *Siripongs v. Calderon*, 35 F.3d 1308, 1314 (9th Cir. 1994) (relying on "forensic evidence . . . expert affidavits, and [ ] deposition of trial counsel" submitted to the court to conclude that petitioner had made out a colorable claim). Here, the simple fact is that Gonzalez's allegations of ineffective assistance of counsel, even if proven, would not arise to prejudice sufficient to undermine confidence in the sentencing result. Therefore, the District Court did not abuse its discretion in failing to conduct an evidentiary hearing. *Karis v. Calderon*, 283 F.3d 1117, 1127 (9th Cir. 2002).

### 1. *Failure to investigate and to call witnesses*

Gonzalez argues that his private defender was ineffective at re-sentencing for failing to investigate potentially mitigating evidence of mental illness, and for not calling family members to testify on his behalf.

[7] Appellant's instant claims fail on both *Strickland* prongs. First, Garcia's alleged failures to investigate and to call witnesses were not objectively unreasonable. Absent any objective indication that Gonzalez suffered from any mental illness, Garcia cannot be deemed ineffective for failing to pursue this avenue of mitigation where Gonzalez's mental illness seemed unlikely. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (that counsel knew defendant had been beaten, without more, did not render decision not to investigate possibility of psychiatric defense unreasonable). Furthermore, Garcia was aware, as a result of Such's letter, of the substance of the family members' testimony, but simply opted not to call them. This "reasoned tactical choice" did not constitute defi-

cient performance. *See Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997) (attorney not ineffective for failing to call character witnesses where testimony had limited value in establishing mitigation); *but cf. Williams v. Taylor*, 529 U.S. 362, 396 (2000) (prejudicial wholesale failure to investigate may violate Sixth Amendment). That Such would have called the witnesses does not render Garcia's failure to do so objectively unreasonable under *Strickland*. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984) (counsel's informed decisions do not run afoul of the Sixth Amendment even if in hindsight a better strategy was available).

[8] Second, even if Garcia's performance was constitutionally deficient, Gonzalez cannot demonstrate prejudice. Here, Garcia presented a number of mitigating factors to the judge at re-sentencing — alcohol abuse, no prior "strikes", *de minimis* nature of the charged conduct, but the court nevertheless imposed an upper-term sentence of 16 years. In doing so, the judge cited Gonzalez's "prior convictions, his poor performance on probation in the past, and the evidence of planning in the current case." ER at 143. The testimony of sympathetic family members would not have impacted any of these objectively verifiable factors enumerated by the trial court. Based on this record, we cannot say that the omission of generally sympathetic testimony by some[6] family members sufficiently "undermine[s] confidence in the [sentencing] outcome." *Strickland*, 466 U.S. at 694. As to the failure to investigate

---

[6]We find it significant to note here that Gonzalez's suggestion that his family members were all on his side, *see* Appellant's Brief, at 41 (family could have testified "they did not fear for their children, and that they would welcome him back in the family group"), is belied by other information found in his own submissions. In particular, Such stated in a declaration to the court that Gonzalez's sister-in-law, Zulema's mother, apparently did *not* intend to fully welcome Gonzalez back into her family's life. ER at 116 ("I also spoke to Mariana Gamino, the mother of the three alleged victims in the case . . . [h]er main concern seemed to be that, if [Gonzalez] were released, he *not be allowed to move back into her house*") (emphasis added).

mental health mitigation, Gonzalez does not contend that he actually suffered from a mental illness; he merely argues that *if* tests had been done, and *if* they had shown evidence of some brain damage or trauma, it *might have* resulted in a lower sentence. Such speculation is plainly insufficient to establish prejudice. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

### 2.   *Failure to object*

Appellant further contends that Garcia was ineffective for failing to object to the trial court's imposition of an upper-term sentence at re-sentencing. Because the court had previously imposed a lower-end sentence, Gonzalez claims that *res judicata* precluded the court from deviating from this determination. Gonzalez argues that Garcia's failure to object to this due process error violated *Strickland*. This claim finds no support in the law.

At his initial sentencing, the trial court determined to be a mitigating factor that Gonzalez's conduct was less serious than the typical molestation case. However, because the court concluded that Gonzalez's prior assault conviction was a "strike" under California law (thereby requiring doubling of the sentence plus a five-year enhancement), the judge imposed a low-end sentence of 6 years for the molestation charge, for a final sentence of 18-plus years.

Upon remand, Gonzalez no longer faced a prior "strike." After affirming its prior conclusion that the severity of the charged conduct was mitigating, the judge explained his reason for deviating from the lower term previously imposed:

> When initially sentencing [Gonzalez], I found that a mitigated term was appropriate, because as a second strike case, a double midterm [sentence] served at 80 percent would produce virtually a life sentence.[7] And

---

[7]Gonzalez was 47 years old at the time of the re-sentencing.

I took that factor into account when imposing the low term. That situation is no longer the case . . . I find that the aggravating circumstances now outweigh those in mitigation. And for that reason, I'm imposing the upper term.

ER at 143-44. The court sentenced Appellant to 16 years.

**[9]** Contrary to Gonzalez's contention, the trial court's imposition of a higher base term on re-sentencing did not violate his due process rights. This is essentially a Double Jeopardy claim, but the Supreme Court's "decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal." *United States v. DiFrancesco*, 449 U.S. 117, 134 (1980). Even if *res judicata* had any relevance in the sentencing context, it would not apply here because the appellate court vacated Gonzalez's prior sentence when it remanded the matter for retrial and re-sentencing. *See, e.g.*, *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) (defendant had "no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence").

**[10]** There is no dispute that the aggregate sentence Gonzalez received on remand was less than that which was imposed initially. Nor is there any allegation that the trial court was impermissibly motivated by vindictiveness at the re-sentencing proceeding. *Cf. Chaffin v. Stynchcombe*, 412 U.S. 17, 24-25 (1973) (due process violated where court imposes harsher sentence at re-sentencing as punishment for defendant's successful appeal). Accordingly, there was no fundamental unfairness in allowing the trial court, on remand, to revisit all the components of Gonzalez's sentence in fashioning an appropriate judgment. *See United States v. Jenkins*, 884 F.2d 433, 441 (9th Cir. 1989) (even where defendant only challenged the restitution portion of his sentence, district court may reconsider other aspects of the entire "sentencing

package" at re-sentencing). Since the trial court's re-balancing of the mitigating and aggravating factors was not error, Gonzalez's counsel cannot be deemed ineffective for failing to raise this meritless claim. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001). Therefore, the California state courts' rejection of Gonzalez's ineffective assistance of counsel claims was not contrary to, or an unreasonable application of, controlling Supreme Court precedent.

## III.   CONCLUSION

For the reasons set forth above, we affirm the denial of the petition.

---

HAWKINS, Circuit Judge, dissenting:

I respectfully dissent. At bottom, this habeas matter is about the process by which indigent defendants are provided counsel. To begin with, it is not easy work. Clients, given a lawyer selected by the same government accusing them, are often suspicious that their case will be given short shrift. Added to the mix here were charges of the most serious sort (molestation of his own brother's children in their home where he was a guest) levied against an individual with a prior criminal history. Convicted at trial and having his sentence doubled based on a prior conviction, Gonzalez had the good fortune of receiving the court-appointed assistance of Richard Such ("Such").

Such was able to convince the state appellate court that Gonzalez's sentence had been improperly doubled and the matter was remanded to district court for re-sentencing. At this point, Gonzalez asked the state trial court to appoint Such to represent him at re-sentencing. Through written documents and verified statements, Gonzalez established that Such had earned his confidence, knew the case well, and was willing to

work at the hourly rate the county typically paid appointed counsel. Additionally, Such had already done some work on sentencing matters. The state court refused, essentially reasoning that appointment of Such was "not the way we do things around here,"[1] and instead appointed Armando Garcia ("Garcia"), a local attorney utterly unfamiliar with Gonzalez's case.

Rather than simply walking away from Gonzalez's case, Such proceeded to write Garcia a lengthy letter, conveying information highly relevant to re-sentencing, including, importantly, that Gonzalez's family members were sympathetic to Gonzalez and trusted him around their children, and that the victim's mother might be willing to testify that a prison sentence was unnecessary. Such also explained that a mental health evaluation might demonstrate that Gonzalez would be unlikely to re-offend.

What did Garcia do with this information? Absolutely nothing. Garcia made no attempt to contact the family, to inquire into Gonzalez's mental history, or to have his client evaluated by mental health experts. At the re-sentencing, Garcia called no witnesses, only arguing that Gonzalez had a history of alcohol abuse and may have been intoxicated at the time of the acts. Even though the court had previously given Gonzalez 18 years and 5 months based on a sentencing enhancement no longer available, Gonzalez was given 16 years.

In his habeas petition, as he had in his state post-conviction petition, Gonzalez sought an evidentiary hearing on his claim

---

[1] The majority claims that local routine was not the only reason for refusing to appoint Such. In fact, the only other reason given was that this was a "straightforward" case. If by "straightforward" the trial court meant a sentencing proceeding in which an appointed defense attorney simply goes through the motions, it hardly justifies refusing to appoint an experienced, previously successful lawyer who not only had Gonzalez's confidence, but had also begun a serious effort to provide fully effective sentencing representation.

that Garcia had provided him ineffective assistance of counsel. The district court, like the state court, refused to conduct an evidentiary hearing. That refusal is where I part company with my colleagues in the majority. By my lights, the district court abused its discretion in refusing to conduct an evidentiary hearing. Because he requested and was denied a hearing in state court proceedings, Gonzalez cannot be faulted for "fail[ing] to develop the factual basis of [his] claim in State court." *Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005) (citing 28 U.S.C. § 2254(e)(2)). "[W]here a petitioner raises a colorable claim of ineffective assistance, and where there has not been a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing." *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004) (*quoting Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990)). Gonzalez has certainly raised a "colorable claim" of ineffective assistance, and should have been afforded an evidentiary hearing on his claim.

In the face of Such's letter, which explicitly made Garcia aware of the possible benefit to conducting a psychological evaluation and seeking the testimony of family members, it is difficult to believe that Garcia's decision not to pursue these avenues constituted a "reasoned tactical choice." This is especially true given that Garcia failed to even inform Gonzalez's family members that a sentencing hearing was taking place. Without a hearing, we are left to wonder what Garcia's excuse was for failing to pursue these simple and potentially useful steps, and his failure to pursue them certainly falls below an "objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

The majority contends that Gonzalez failed to offer sufficient evidence to warrant an evidentiary hearing on his federal habeas petition. This seems to ignore Such's letter to Garcia which reflected Such's own investigation and suggestions on how to prepare for Gonzalez's re-sentencing. Because Garcia followed none of the suggestions, there is of course no record

of what would have happened had he done so. Only an evidentiary hearing can answer that question.

Moreover, without a hearing, we cannot know whether Garcia's inaction prejudiced Gonzalez. It may be that family members were in fact unwilling to testify in his favor and that a mental exam would not have been helpful. But we will never know this because Garcia never raised a finger to find out. At the very least, however, Gonzalez raises a "colorable claim" that there is a "reasonable probability," *id.* at 694, that a psychiatric evaluation and family member testimony would have impacted his sentence. The majority's suggestion that "[t]he testimony of sympathetic family members would not have impacted" any of the sentencing factors the court considered simply makes no sense and, without an evidentiary hearing, we will never know why Garcia never sought them out or what those family members would have said. But Garcia's failure to even inquire whether family members would testify meant that the sentencing court would not hear potentially critical evidence relating to both mitigation and rehabilitation.[2] I would remand for an evidentiary hearing to afford Gonzalez a full and fair opportunity to pursue his claim of ineffective assistance.

---

[2]Garcia's shoddy representation is all the more troublesome given that the risk of ineffective assistance could have been easily removed had the trial court simply appointed Such to represent Gonzalez at re-sentencing. The judge's refusal to appoint Such, essentially because it was not the usual practice, was arbitrary and contrary to common sense. There was every reason, including economy, to appoint Such, since he offered to represent Gonzalez at the same rate the state would have paid through the private defender program, and he was already familiar with the issues that would be pertinent at re-sentencing. The majority's assertion that appointment of counsel of choice is not a panacea misses the point. In this particular case, appointment of Such might well have made a difference. But we cannot know because there was no evidentiary hearing.