Filed 3/4/25  P. v. Luna CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM VICTOR LUNA,<br><br>    Defendant and Appellant. | B333697<br><br>Los Angeles County<br>Super. Ct. No. A889197-02 |

APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Richard B. Lennon and Nancy Gaynor, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Chung L. Mar and Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, a jury convicted William Victor Luna of the attempted murder of Esteban Leal. The jury found the attempted murder was committed willfully, deliberately, and with premeditation, that Luna personally used a deadly and dangerous weapon—a knife, and that he personally inflicted great bodily injury on Leal. Luna now appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1] The trial court concluded Luna had not made a prima facie showing of eligibility for resentencing relief. Luna contends the trial court erred because "the jury instructions left open the possibility that his conviction was based on a finding of malice imputed from others." We find the record of conviction conclusively establishes Luna's ineligibility for resentencing as a matter of law. We therefore affirm the trial court's denial of his petition.

## FACTS AND PROCEDURAL BACKGROUND

1. ***Luna and Carlos Arciniega attack Leal; Luna stabs Leal in the back 11 times***

We refer to the factual background from Luna's trial only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) We previously granted the Attorney General's request for judicial notice of the clerk's and reporter's transcripts in Luna's direct appeal from his conviction, *People v. Luna* (Jan. 26, 2006, B168860) [nonpub. opn.] (*Luna I*).

---

[1] References to statutes are to the Penal Code. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

In May 1988, Leal was walking through a park in El Monte in the early morning hours. Two Latino men approached him and demanded his money, his wallet, and his "personal effects." The men said, " 'Give me your money and anything you got. If you don't, I will kill you.' " Leal refused and the men attacked him. One man punched Leal with his fists and the other man stabbed him in the back. Leal lost consciousness. When he came to, he saw that his watch and his wallet with $75 in it were missing. Leal was taken to a hospital. He identified Luna as the man who had stabbed him. A police officer who saw Leal right after the robbery counted 11 stab wounds in his back. (*Luna I*.)

## 2. *The charges, trials, verdicts, and sentence*

The People charged Luna with attempted murder, assault with a deadly weapon, and robbery. The People alleged Luna committed the attempted murder willfully, deliberately, and with premeditation. The People also alleged Luna personally used a deadly and dangerous weapon—a knife—in the commission of the attempted murder and robbery, and that, as to all three counts, he personally inflicted great bodily injury on Leal.[2]

---

[2]    Luna and Arciniega were tried together in 1989 on charges arising from two separate incidents:  the assault on Leal on May 13, 1988, and an attack on an "Arthur B." on May 11, 1988. The jury convicted both defendants on all counts and another panel of this court affirmed the convictions. (*People v. Arciniega and Luna* (Apr. 29, 1992, B044320) [nonpub. opn.].)  In 2002, the Ninth Circuit Court of Appeals reversed a district court's denial of Luna's petition for a writ of habeas corpus. The federal appellate court found Luna's trial lawyer had been ineffective for failing to interview his mother and sister as alibi witnesses. (*Luna v. Cambra* (9th Cir. 2002) 306 F.3d 954.)  Luna was retried

Luna's mother and sister testified at trial that he was at home in bed asleep when Leal was attacked. Luna also testified in his own defense. He denied any involvement in the crimes, claiming he had been at home sleeping. (*Luna I*.)

The trial court instructed the jury with (among other instructions) CALJIC Nos. 3.00 (Principals–Defined), 3.01 (Aiding and Abetting–Defined), 6.00 (Attempt–Defined), 8.66 (Attempted Murder), 8.67 (Attempted Murder–Willful, Deliberate, and Premeditated), 9.00 (Assault–Defined), 9.02 (Assault with a Deadly Weapon), 9.40 (Robbery), 9.43 (Second Degree Robbery as a Matter of Law), 17.16 (Personal Use of Dangerous/Deadly Weapon), and 17.20 (Infliction of Great Bodily Harm). The court did not give the jury CALJIC No. 3.02 (Principals–Liability for Natural and Probable Consequences).

The jury convicted Luna on all three counts and found all of the allegations true. The trial court sentenced Luna to life with the possibility of parole for the attempted murder of Leal (consecutive to his 1989 sentence in the Arthur B. case). The court stayed the weapon and great bodily injury enhancements as well as the sentences on the assault with a deadly weapon and robbery counts. Another panel of this court affirmed Luna's conviction. (*Luna I*.)

### 3. *Luna's petition for resentencing*

In July 2022 Luna, representing himself, filed a form petition for resentencing under section 1172.6. Luna checked

---

in 2003 (as the sole defendant) and again was convicted of the attempted murder, assault, and robbery of Leal. (*Luna I*.) Luna's petition for resentencing seems to be addressed only to his 2003 conviction in the Leal matter, not his 1989 conviction in the Arthur B. matter.

boxes on the form stating (1) "A[n] . . . information . . . was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine," (2) he "was convicted of **murder**, **attempted murder**, or **manslaughter** following a trial," and (3) he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Luna also checked a box that stated, "Having presented a facially sufficient petition, I request that this Court appoint counsel to represent me."

The court appointed counsel for Luna. On July 21, 2023, the prosecution filed a response to Luna's petition. The prosecution contended Luna "was convicted of willful, deliberate and premeditated attempted murder." The prosecution noted the trial court had not instructed the jury "on the natural and probable consequences theory of culpability." Citing *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*), the prosecution asserted Luna could not "make a prima facie showing that he is eligible for resentencing under Penal Code section 1172.6." The prosecution attached as exhibits the court of appeal opinion in Luna's direct appeal, the jury instructions given at his trial, and the verdict forms.

On July 24, 2023, counsel appeared (by Webex) before the trial court. Luna's counsel told the court he needed more time to prepare a reply to the prosecution's response and counsel had agreed on September 27 as the next date.

5

Luna's counsel filed his reply on August 15, 2023. Counsel conceded Luna's jury "was never instructed on natural and probable consequences." But, counsel contended, the jury instructions "invited the jury to convict Mr. Luna of attempted murder based on imputed malice and not his own intent to kill." Counsel noted CALJIC No. 8.66 referred to "[t]he person committing the act" and CALJIC No. 8.67 referred to "the would-be slayer." Counsel cited *People v. Powell* (2021) 63 Cal.App.5th 689 and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). Implicitly acknowledging those cases involved murder, not attempted murder, counsel stated, "There are currently no published appellate decisions on aiding-and-abetting instructional issues under CALCRIM 401 and CALJIC 3.01 as they relate to attempted murder." But, counsel asserted, two unpublished cases have "highlighted the same concerns."

There is no reporter's transcript for September 27 or for any date after July 24. On August 17, 2023, the trial court issued a written Memorandum of Decision denying Luna's petition. The court stated Luna was "not entitled to relief as a matter of law." The court continued,

> "The Court file reflects that the petitioner was convicted of willful, premeditated, and deliberate attempted murder on a theory of being a direct perpetrator and not on a theory of natural and probable consequences, said theory never being presented to the jury. The jury also found that petitioner *personally* used a deadly weapon, to wit a knife, and that

he *personally* inflicted great bodily injury on the victim."[3]

## DISCUSSION

### 1.   *Section 1172.6*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for murder liability and limited the scope of the felony murder rule.  (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*)).  Senate Bill 1437 also provided an avenue for a person convicted under the former law to petition the sentencing court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law.  (*People v. Strong* (2022) 13 Cal.5th 698, 708–709; *Lewis*, at pp. 959–960.)  Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, extended resentencing eligibility to individuals convicted of attempted murder under the natural and probable consequences doctrine.  (Stats. 2021, ch. 551, § 1(a).)  Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*Coley, supra,* 77 Cal.App.5th at p. 548.)

---

[3]     Nothing in the record indicates what happened to the September date or whether, for example, counsel agreed the court could decide the matter in chambers based on their briefs.  In any event, Luna has not raised any objection or argument on appeal regarding any failure by the trial court—if there was in fact a failure—to hear oral argument on whether he had made out a prima facie case.

7

If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (*Lewis*, *supra*, 11 Cal.5th at pp. 962–963; see § 1172.6, subds. (b)(1)(A), (b)(3).)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that he is entitled to relief.  (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, the court takes the petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his factual allegations were proved.  If so, the court must issue an order to show cause.  (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Curiel* (2023) 15 Cal.5th 433, 463–464.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971; see *Curiel*, at pp. 463–464; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)  But if the record of conviction contains facts refuting the allegations made in the petition, the trial court is justified in rejecting them.  (*Eynon*, at p. 975; see *Lewis*, at p. 971.)

The jury instructions are part of the record of conviction, because the instructions "given at a petitioner's trial may provide

8

'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,'" which may not take place until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted on other grounds Sept. 23, 2020, S263939 and held for *Lewis*, review dismissed Nov. 17, 2021, opinion citable to the extent not inconsistent with *Lewis*; see *People v. Estrada* (2022) 77 Cal.App.5th 941, 943, 946 [jury instructions showed trial court never instructed jury on natural and probable consequences doctrine; summary denial of petition affirmed].) The verdicts are also part of the record of conviction. (*People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 55–56 (*Harden*) [affirming summary denial of petition; jury instructions and verdict irrefutably established as a matter of law that defendant was ineligible for resentencing].)

We independently review the denial of a resentencing petition at the prima facie stage. (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238.)

## 2. *Luna is ineligible for resentencing as a matter of law*

Section 1172.6 authorizes "[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine" to petition for resentencing. (§ 1172.6, subd. (a).) Luna concedes his jury was not instructed on the natural and probable consequences doctrine. Accordingly, he was not "convicted . . . under the natural and probable consequences doctrine," and under the statute's plain language he is ineligible for relief as a matter of law. (*Ibid*. See *Coley*, *supra*, 77 Cal.App.5th at p. 548

9

["Section 1170.95 applies by its terms only to attempted murders based on the natural and probable consequences doctrine."].)

Our inquiry could end there.  Nevertheless, we address Luna's contention that "[t]he jury instructions allowed the potential of a conviction based on imputed malice."  Luna relies on *Langi, supra,* 73 Cal.App.5th 972 and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*).

*Langi* involved a conviction for second degree murder, which can be based on the killer acting with implied malice instead of express malice.  In *Langi*, the court of appeal found the standard aiding and abetting instruction—which the court had given—created "an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi, supra*, 73 Cal.App.5th at pp. 982–983.)  *Maldonado* extended this logic to a first degree lying-in-wait murder, because that crime essentially can be a second degree implied malice murder accompanied by lying in wait.  The required " 'state of mind simply is the intent to watch and wait for the purpose of gaining advantage and taking the victim unawares in order to facilitate the act [that] constitutes murder. . . .  It does not include the intent to kill . . . .' " (*Maldonado, supra*, 87 Cal.App.5th at pp. 1262–1263.)

*Langi* and *Maldonado* have no application to Luna's conviction, which was not murder, much less second degree implied malice murder or murder potentially based on a lying-in-wait theory.  Luna's jury convicted him of the *attempted* murder of Leal.  It found true the allegation that Luna committed the attempted murder willfully, deliberately, and with premeditation.  It also found true the allegations that

10

Luna personally used a knife in the commission of the crime and that he personally inflicted great bodily injury on Leal.

In contrast to the implied malice murder involved in *Langi*, the perpetrator of an attempted murder must have the specific intent unlawfully to kill another human being. (See *People v. Mumin* (2023) 15 Cal.5th 176, 190 ["[A]ttempted murder requires a specific intent to kill." (italics omitted)]; *People v. Covarrubias* (2016) 1 Cal.5th 838, 890 [attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing].) "An intent to kill is the equivalent of express malice, at least where there is no question of justification or excuse, and by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice . . . ." (*Coley*, *supra*, 77 Cal.App.5th at pp. 547–548.) This requirement of a specific intent to kill applies equally to a defendant convicted of attempted murder as a direct aider and abettor.[4] (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1118; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [the person guilty of attempted murder as an aider and abettor must intend to kill].)[5]

---

[4] It appears the jury convicted Luna—who, according to the testimony, stabbed Leal in the back 11 times—as a direct perpetrator rather than an aider and abettor. In resolving this appeal, we need not consider the question of whether Luna acted as a direct perpetrator or a direct aider and abettor. (See *Gentile*, *supra*, 10 Cal.5th at pp. 847–848 [well settled that Senate Bill 1437 "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"].)

[5] Luna contends the "equally guilty" language in CALJIC No. 3.00 and the term "would-be slayer" in CALJIC No. 8.67

11

Moreover, the jury found true, beyond a reasonable doubt, that Luna personally inflicted great bodily injury on Leal and that he personally used a deadly and dangerous weapon— a knife—in the commission of the attempted murder. The true finding on the great bodily injury enhancement "irrefutably establishes as a matter of law that the jury determined" Luna was the person who stabbed Leal. (See *Harden, supra,* 81 Cal.App.5th at pp. 55–56.) "The natural meaning of 'personally inflicted' is that the defendant [himself] inflicted the injury." (*Id.* at p. 55; *People v. Cole* (1982) 31 Cal.3d 568, 578–579.) And while a "true" finding on an allegation that the defendant

---

"incorporated imputed malice concepts." These contentions are without merit. The "equally guilty" language in CALJIC No. 3.00 did not allow the jury to find Luna guilty of attempted murder without considering his own mental state. (See *People v. Johnson* (2016) 62 Cal.4th 600, 638–641 [rejecting the argument that CALCRIM No. 400's "equally guilty" language allows a jury to convict an aider and abettor of first degree murder based on the perpetrator's culpability without considering the aider and abettor's mental state]; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433 [former CALJIC No. 3.00 "generally stated a correct rule of law"; all principals, including aiders and abettors, are " 'equally guilty' " in the sense that they are all criminally liable].) In arguing the "would-be slayer" language in CALJIC No. 8.67 caused the jury to impute malice, Luna overlooks the preamble to the instruction. It requires the jury to find the defendant guilty of attempted murder *before* considering the truth of the allegation that the crime attempted was willful, deliberate, and premeditated murder. CALJIC No. 8.67 does not concern the requisite intent or mental state for conviction of attempted murder. We assume Luna's jury understood and followed the instructions given. (See *People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

12

personally used a weapon in the commission of the crime doesn't automatically render him ineligible for relief under section 1172.6 (*People v. Offley* (2020) 48 Cal.App.5th 588, 592), the true finding here of Luna's "use" of a knife—coupled with a "true" finding on the personal infliction of great bodily injury allegation—certainly seems to reflect the jury's conclusion that Luna stabbed Leal and that he did so willfully, deliberately, and with premeditation.

In sum, the record of conviction demonstrates the jury convicted Luna as the perpetrator of the attempted murder (or, at a minimum, as a direct aider and abettor). The trial court did not instruct the jury on the natural and probable consequences doctrine. Luna accordingly is ineligible for relief under section 1172.6 as a matter of law.

## DISPOSITION

We affirm the trial court's order denying William Victor Luna's petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


ADAMS, J.

14